### Hicks *vs.* Shouse.

Case 2.

#### APPEAL FROM FAYETTE CIRCUIT.

Ord. Pet.

1. An obligation was to pay $500 "so soon as I sell my house and lot in the city of Lexington, and until said sale is made, I promise to pay eight per cent. interest on said sum" Held that the $500 was due in a reasonable time, and seven years, which was the time in this case before suit, was long enough for the payee to wait.

2. Interest was credited on the obligation for seven years. It not appearing at what rate it was computed, the court should not, in the absence of proof, presume that it was at eight per cent., and order a credit on the note for the excess over six per cent.

[The facts of the case appear in the opinion of the court.—Rep.]

*Robinson & Johnson* for appellant—

It is admitted in the petition that the defendant had annually paid the interest, and that he had not sold the house and lot in Lexington; but it is alledged that he has had ample time to do so, and that it was the understanding that he was to do so in a reasonable time. Hicks denies that there was any understanding other than what the writing shows; alledges that he has always been willing and anxious to sell at a fair price—even to sell for less than the property cost him. On demurrer to the answer the court decided for the plaintiff.

The only ground upon which the decision can be maintained is, that Hicks was bound to sell the house and lot in a reasonable time.

Did Hicks covenant to sell in a reasonable time? The only words which can be relied on as a covenant are, "so soon as I sell my house and lot," &c., not "so soon as I can sell," nor "that I will sell a house and lot," but merely that he will pay the money when he sells. There is no covenant expressed. Is there any implied? This depends upon the intention of the parties, to be arrived at from the whole instrument.

The inference to be drawn from the whole instrument is, that Shouse was willing for Hicks to keep the money as long as he chose to do so, paying eight per cent. interest for it, which was regarded as an equivalent for any delay in payment which Hicks might claim.

The case of *Haggin vs. Williamson*, 5 *Monroe* ——, is not analogous to this. In that case Haggin had failed to furnish Mr. Williamson a house to live in, which was the condition on which he was *not to be hastened*. In that case, if the house had been furnished, Haggin could not have been hastened to pay the money.

The court cannot make a contract for parties by implication, where the implication is not *necessary*, but only *probable*.

But if judgment was proper, it should have been only for the balance due, after crediting all his payments of interest at 8 per cent., and charging with only 6 per cent. Upon that basis the judgment rendered was for too large a sum. Hicks is anxious to comply with his contract as he made it, but if he is to be held to what is supposed to be an implied contract, which he did not make, he insists that it is a legal implication that the forbearance of a money demand is worth 6 per centum per annum and no more.

*Harrison & Hunt* for appellee—

What is the true construction of the contract sued on? The object to be attained is justice between the parties. The construction should be reasonable, (*Chitty on Contracts*, 74,) and such as the parties to the contract understood it to be when made. (*Paley's Moral and Political Philosophy*, 104; Gunnison vs. Bancroft, 11 *Vermont*, 493.) The party should be held to that meaning which he knew the other party supposed the words to import. (2 *Parsons on Contracts*, 11.) Chief Justice Hobert says, (*Hobert*, 277): "I do exceedingly commend the judges that are curious and subtle to invent reasons and means to make acts according to the just intent of the parties, and to avoid wrong and injury which by right rules might be wrought out of the act." This sentiment is approved by Lord Hale, in *Crossing vs. Skidmore*, 1 *Vent.* 141, and by Chief Justice Willis, (*Willis*, 676, 684,) and, we say, approved by the conscience of every just man.

This contract is susceptible of two constructions—the one literal, which does manifest wrong to appellee—the other according to its spirit, which does wrong to neither party. "The letter killeth"—"the spirit giveth life." By the literal construction, the money is not due, and may never become due. More than eight years have elapsed since the promise to pay—eight or eighty more may elapse and the promise construed literally would not give a right of action. It is, literally construed, a promise to pay just when the appellant may choose to pay. Appellant may die before he sells the house and lot. What would be appellee's condition? Could she present it as a debt against appellant's estate? The event has never happened which, by a literal construction of the instrument, gave a right to sue. The court can see to what absurdity such a construction would lead.

It is unreasonable to suppose that it was the intention of these parties that the creditor should never

have it in his power to take steps to secure the five hundred dollars, even though the debtor was failing in his circumstances and squandering his property. The creditor may have been willing to wait a reasonable time for the sale of the house and lot, but not forever, and having no security for his debt.

The allegations of the petition show that the house and lot was then in market—offered for sale. This is not denied. The appellee had a right to believe that the appellant in good faith desired to sell. If he did not he acted in bad faith. The proof shows that the house and lot is worth from thirty-five hundred to four thousand dollars. All these facts being known to the parties, what is the necessary conclusion in regard to the meaning of the contract? Was it not that appellant would sell the house and lot in a reasonable time—sell the house and lot when the money was to be paid? Is not the conclusion irresistible that appellant knew that appellee so understood the contract? If such was the expectation and belief of appellant, was not the circuit court right in deciding the money to be due, after the lapse of more than seven years, whether the house and lot was sold or not? We cannot doubt it.

The court are referred to the case put in *Chitty on Contracts*, 31, and that in *Bouvier's Institutes, vol.* 1, 259, *sec.* 664.

Words of recital sometimes constitute agreements on which an action may be brought: so words of proviso and condition may be construed into stipulations. (2 *Parsons on Contracts*, 22, 23.)

December 4.    Chief Justice CRENSHAW delivered the opinion of the court:

Shouse instituted suit in the Fayette circuit court against Hicks, upon the following obligation :

" I have this day purchased a negro named John, belonging to Mrs James McKinney, under two decrees of the Fayette circuit court against her, in the names of Shouse & Smith, and James H. Shouse & Co., for which negro I promise to pay Jas. H. Shouse,

who is the owner of said decrees, the sum of $500.; and I promise to pay said money so soon as I sell a house and lot in the city of Lexington, bought of C. J. Sanders and wife; and, until said sale is made I promise to pay eight per cent. interest per annum on said sum.   November 29, 1848.

BEVERLY A. HICKS."

Teste : George B. Kinkead."

This obligation has credits for interest, indorsed thereon, up to the 29th day of November, 1855 ; and the suit thereon was instituted on the 21st day of July, 1856, which was more than seven years after the obligation was executed.

The petition alledges, in substance, that at the date of the obligation, it was the understanding of the parties, that Hicks was anxious to sell said house and lot, and would, within a reasonable time, sell the same and pay to the plaintiff said sum of money; that said house and lot had not been sold, although it could have been sold within the time which had elapsed, if Hicks had, in good faith, desired to pay the said debt; that Hicks had been frequently requested to make said sale and pay said debt, and he had refused, because he was unwilling to sell unless he could do so at a price above the market value.

The defendant answers that he had been anxious to make sale of his house and lot from the time of the execution of said obligation, and that it had been in market ever since; that the property cost him over $4,000, and that it had, for the last five or six years, been offered for $3,600. and that he had spoken to several persons to aid him in the sale at that price, offering a commission or compensation of $100 for selling at that price; that it had been valued by the city assessors above that price, until the last assessment, when it had been valued at $3,-500 ; that he had never had but two offers for the property—one on a credit which did not suit him, and the other was an offer to exchange land for said house and lot, which he did not wish to make; that

he does not know the market value of his property, or whether it has any market value; that the price which he had asked was a moderate one, not exceeding its true value, &c.

The above are the material statements of the plaintiff and defendant, and upon them the cause was submitted to the court for decision, and judgment was rendered for the plaintiff for the sum of $500, with interest from the 29th day of November, 1855, the interest having been paid, as appeared by indorsements upon the obligation, up to that time.

It is insisted that the court erred in giving judgment for the plaintiff at all; and that, even if the court were right in giving judgment for the plaintiff, the defendant should have been credited with the excess of interest which had been paid above six per cent. In reference to this credit which is claimed, we remark that, in the first place, we are asked to assume that interest at the rate of eight per cent. had been paid up to the 29th of November, 1855, because the obligation stipulated for that rate of interest. But, even if it were conceded, which we do not do, that this assumption would be proper, we are of opinion that the court did not err in failing to give the credit, inasmuch as usury was not relied upon by the defendant, nor the credit claimed by him in his answer.

The main question, however, is, was judgment against the defendant authorized for any amount? We think it was, and that the judgment is for the proper amount.

A reasonable construction should be given to the covenant—the intention of the parties should be effectuated, if practicable, and their understanding carried out. Such a construction, as we think, results in the conclusion that the house and lot was to be sold in a reasonable time, or the money be paid without a sale. The argument of defendant's counsel would, as it seems to us, lead to an absurdity, and would do violence to all reasonable calculation

1. An obligation was to pay $500 "so soon as I sell my house and lot in the city of Lexington, and until said sale is made I promise to pay eight per cent. interest on said sum." Held that the $500 was due in a reasonable time, and seven years, which was the time in this case before suit, was long enough for the payee to wait.

2. Interest was credited on the obligation for 7 years. It not appearing at what rate it was computed, the c'rt should not, in the absence of proof, presume that it was at 8 per cent., and order a credit on the note for the excess over 6 per cent.

as to the intention of the parties. It leads to the conclusion that the defendant, by paying eight per cent. interest annually, might postpone the payment of the debt to an indefinite period.

As we understand the covenant, construing it according to its reason and spirit, the plaintiff was willing, and intended, that the defendant, by paying an annual interest of eight per cent., might have a reasonable time to make sale of his house and lot—not that he might sell when he pleased, and pay when he pleased. A reasonable time has elapsed for the sale, and it has not been made; and it is not stated by the defendant that he could not sell, but only that he could not sell at what he esteemed a reasonable and fair value for the property. It could have been sold at its market value at any time, and the contrary is not even intimated. If the defendant thought proper not to sell for the market value, he ought, after the lapse of a reasonable time for a sale at his own price, and his failure to sell, to pay the money.

Judgment affirmed.