Red River National Bank v. Ermina C. Bray et al.

No. 2241.  Decided June 12, 1912.

### 1.—Surety—Release by Extension of Time.

The extension of time given by the creditor to a principal debtor, in order to release the surety or his property standing as security, must be by a contract which would preclude the creditor from enforcing his debt meantime. If it was obtained from the creditor by fraud of the principal debtor, it was not so binding. The surety could still demand of the creditor its enforcement according to the terms of his original agreement; or, paying the debt, could stand in the place of the creditor as to the right to so enforce it. It was not necessary to this that the exension be void; it was sufficient that the creditor had the right to avoid it.  (Pp. 315, 316.)

### 2.—Same—Case Stated.

A husband and wife gave notes for money borrowed from a bank, securing same by deed of trust on the wife's separate property. The husband and the bank agreed on an extension of time for payment, in consideration of payment of interest in advance, the wife not consenting. On maturity ac-

cording to the terms of the extension agreement, the wife sought to enjoin sale under the deed of trust, claiming that the extension of the notes had released her property as security. There was evidence supporting the issue presented by defendant, that the extension had been procured from it by fraud of her husband. Held that such fact, if established, would prevent the discharge of the property by the extension of time, and the issue should have been submitted.  (Pp. 314-317.)

Error to the Court of Civil Appeals, Sixth District, in an appeal from Red River County.

Mrs. Bray, joined by her husband, sued the bank to enjoin sale of her separate real estate under a trust deed. They prevailed in the trial court and defendant appealed. On affirmance appellant obtained writ of error.

*Chambers & Black* and *Lennox & Lennox*, for plaintiff in error.— An agreement of extension for a definite period of time, without the knowledge or consent of the surety, procured by the fraud and deceit of the principal debtor, is not a "binding contract of extension" within the meaning of the decisions so as to release and discharge the surety, although interest was paid on the debt in advance to the end of the extension period. Officer v. Marshall, 9 Texas Civ. App., 428; Jameson v. Officer, 15 Texas Civ. App., 212; Saufley v. Jackson, 16 Texas, 577; Trammel v. Swain, 25 Texas, 474; Corydon Deposit Bank v. McClure, 106 S. W. (Ky.), 1177; Corydon Deposit Bank v. McClure, 110 S. W. (Ky.), 856; Bank v. Buchanan, 87 Tenn., 32; McDougall v. Walling, 15 Wash., 78, 55 Am. St., 871; Douglas v. Ferris, 138 N. Y., 192; Albright v. Griffin, 78 Ind., 182; Bebout v. Bodle, 38 Ohio St., 500; Hubbard v. Hort, 33 N. W., 233; Corydon Deposit Bank v. McClure, 130 S. W. (Ky.), 971; Stratton v. Mc-Makin, 84 Ky., 641; Krupp v. St. Martenus-Ritter-Verrin (Ky.), 53 S. W., 648; Struss v. Masonic Sav. Bank (Ky.), 11 S. W., 769; Bank v. Gaines (Ky.), 9 S. W., 396; Kincaid v. Yates, 63 Mo., 45; Northern Bank v. Farmers Nat. Bank (Ky.), 63 S. W., 604; Gordon v. McCarty, 3 Whart., 407; Brooking v. Bank, 83 Ky., 431; 7 Cyc., 898; Kirby v. Landis, 54 Iowa, 150; Dwinnell v. McKibben, 93 Iowa, 331.

If the bank was in position to avoid and disregard its contract with E. F. Bray by reason of his fraud and deceit, then the rights and obligations of Mrs. Bray as surety were in nowise affected thereby, because she can not insist that it was a valid and binding agreement to such an extent as to release her property from liability for·the payment of the debt without participating in the fraud and reaping a benefit therefrom, which equity will not permit. Saufley v. Jackson, 16 Texas, 585; Hudson v. Morriss, 55 Texas, 602; Cox v. Miller, 54 Texas, 27; Bass v. Peevy, 22 Texas, 296; Struss v. Masonic Sav. Bank (Ky.), 11 S. W., 769; 1 Perry on Trusts, sec. 172.

If the appellant was in position to disregard its contract with Bray by reason of his fraud, then its hands were not so bound and tied that it could not act, in case Mrs. Bray had desired to pay the debt and proceed against the principal for indemnity, or had demanded that payment be enforced before the expiration of the extension period.  Rev. Stat., 1895, arts. 3811 and 3812; Benson v. Phipps, 87

Texas, 579; Ingram v. Abbott, 14 Texas Civ. App., 583; Claiborne v. Birge, 42 Texas, 103.

There being no testimony that appellant discovered the fraud until after the time agreed upon had expired, it was entitled to annul and disregard the contract without some showing that it acquiesced therein with full knowledge of the material facts inducing the agreement. Ingram v. Abbott, 14 Texas Civ. App., 583; Claibourne v. Birge, 42 Texas, 103.

*Short & Field,* for defendants in error.—Where the wife signs notes with her husband for his debt and executes a trust deed upon her separate property to secure its payment, her property is released by granting an extension of time to the husband without her consent. Angel v. Miller, 16 Texas Civ. App., 679; Wofford v. Unger, 55 Texas, 483; Westbrook v. Belton National Bank, 97 Texas, 246; DeBarrera v. Frost, 39 Texas Civ. App., 544; Woodall v. Streetor, 39 S. W., 169; State Nat. Bk. of Ft. Worth v. Stratton White Co., 50 S. W., 631; Zapalac v. Zapp, 22 Texas Civ. App., 375; Farmers & Merchants Bank v. Bayless, 1 Texas Civ. App., 717; Fleming v. Borden, 37 S. E., 219; Johnson v. Franklin Bank, 73 S. W., 191; Kearby v. Hopkins, 14 Texas Civ. App., 166.

The contract to extend the time of payment made between E. F. Bray or the Bray Brothers Company and the appellant was actually performed. The rights of the surety were jeopardized by the extension. The extension was granted and the debt carried for the stipulated time after payment of the consideration for such extension. The appellee's property was thereby discharged from the lien created upon it. Parlin & Orendorff Co. v. Hutson, 65 N. E., 93; Fleming v. Borden, 37 S. E., 219.

Mr. Justice Phillips delivered the opinion of the court.

On April 11, 1907, E. F. Bray and Erminia C. Bray, his wife, executed and delivered to the Red River National Bank of Clarksville, Texas, their two promissory notes, payable to the bank, aggregating $4,133.30, principal, the first maturing October 15, 1907, and the other December 15, 1907, to secure the payment of which they at the same time granted a deed of trust lien upon certain real estate, situated in Clarksville, the separate property of Mrs. Bray. Neither of the notes was paid at maturity, but between October 15, 1907, the date of the maturity of the first note, and July 7, 1908, payments amounting to $1,500.00 were made upon that note. Request was made by Bray for an extension of the maturity of both notes, and finally, on July 7, 1908, in consideration of the payment in advance of the interest that would accrue on them to October 1, 1908, the bank agreed with Bray to extend their time of payment to that date. Upon default then made in their payment the bank attempted to enforce its deed of trust by a sale of the property under the power afforded by its provisions. Thereupon Mrs. Bray, joined by her husband, brought this suit to enjoin such foreclosure proceedings upon the ground that the extension of the maturity of the notes was without her consent, whereby her property was released as security for the debt. The bank, among

other things, answered that it had been induced to grant the extension by certain fraudulent and false representations made to it by
Bray for the purpose of effecting the release of Mrs. Bray's property
as security for the debt by duping it into an agreement for the extension.  By cross- action it sought recovery for its debt and foreclosure
of its lien.  Judgment in the trial court resulted, through a peremptory instruction, in favor of Mrs. Bray, cancelling the deed of trust
lien, and denying to the bank recovery upon its notes because of bankruptcy proceedings instituted by Bray and then pending.  The Court
of Civil Appeals has affirmed that judgment, holding in its opinion
that there was no evidence that Mrs. Bray consented to the extension.
It further finds that there was evidence sufficient to raise the issue
that the bank was deceived into agreeing to the extension by a fraud
practiced upon it by Bray, as was alleged by the bank, but holds that
the operation of the agreement to extend, notwithstanding the practice of a fraud in its procurement, was not otherwise than to work a
release of the wife's property as security, inasmuch as an agreement
so induced was not void in the sense that a stranger would be entitled
to disregard it, but at most was merely voidable at the instance of the
bank as between itself and Bray.

The established rule of law is that if, without the consent of the
surety, a binding agreement is made between the creditor and the
principal debtor for an extension of the maturity of the debt, the
surety is released; and the effect is the same as to property that stands
in the relation of a surety, as did the property of Mrs. Bray in this
case.  The reason of the rule demonstrates its justness as a principle
as well as its necessity in the business affairs of the people, for at any
time after the maturity of the debt the surety, for his own protection,
should possess the right to pay it and proceed against the principal
for indemnity, and such right is impaired if the creditor enter into
a valid contract with the principal for an extension of the time of
payment.  The law therefore visits upon the creditor the deserved
consequence of his so impairing the right of the surety by releasing
the surety from liability.  Benson v. Phipps, 87 Texas, 578, 47 Am.
St., 128.  The true test in every such case accordingly is whether the
agreement of extension is such as to deny to the surety the exercise of
this right, which inheres in his relationship and which the law places
at his disposal and command as a benefit and protection immediately
upon the maturity of the debt.  If the agreement of extension be a
binding one, its effect clearly is to deprive him of his right.  But if
the agreement be not a binding one, it remains intact and unprejudiced.  What the law speaks of in this sense as "a binding agreement" is an agreement that is conclusive upon both the creditor and
the principal; an agreement that both effectually stays the hand of
the creditor, and yields to the principal the full benefit of the indulgence; an agreement that neither can avoid, but which both must
respect; and which, because of its inviolable character, operates to the
harm of the surety.  It does not mean an agreement that the principal
has induced by his deceit and fraud, and is therefore wanting in that
integrity which the law demands in contracts that it will enforce.  It
does not mean an agreement which is the result of the principal's

artifice, bearing the semblance of a crafty trick and actuated by a dishonest design, under which the creditor is beguiled into a position where his forbearance, thus influenced, is turned against him, and is availed of to destroy the security for his debt. The law will not so protect the fruits of the fraud of the principal, or so penalize the magnanimity of the creditor. Such an agreement is not binding upon the creditor. If it is not binding upon the creditor, it is not such an agreement as will operate to the disadvantage of the surety or the prejudice of his rights. If the creditor should elect to stand upon it after notice of the fraud and request made by the surety that he proceed against the principal, the surety would be released under Arts. 3811 and 3812 of the Revised Statutes, the first of which provides that when the right of action has accrued upon the obligation, the surety may require, by notice in writing, that the creditor forthwith institute suit upon it; and the other providing that in the event he fails to do so, as therein provided, after such notice, the surety shall be discharged. If the agreement is brought about by the fraud of the principal and is, therefore, not binding upon the creditor, no valid extension of the maturity results, the right of action would be regarded as having accrued upon the original maturity; and the statute would be available to the surety. Nor would such an agreement foreclose the right of the surety for his own protection to pay the debt and proceed himself against the principal for indemnity. Such right of action would be as complete in the surety as in the creditor, as the principles of subrogation would cast upon him all the rights and remedies of the creditor, including the defenses of fraud and deceit. Brandt on Suretyship, secs. 298 and 322. As such an agreement would not impair the right of the surety, no reason can exist why it should destroy the security of the creditor.

The Court of Civil Appeals, as stated in its opinion, recognizes that if this were a contract merely between the bank and Bray, the bank would be entitled to be heard upon its plea, and that as between them the agreement was subject to be avoided by the court because of the fraud alleged to have been perpetrated by Bray in its procurement. If it was thus subject to be set aside as between the bank and Bray, it was not a binding agreement between them, and can not be held operative to release the surety. The surety can not invoke for his release an agreement by which the creditor is not bound, regardless of whether it is binding upon the principal. It is only an agreement for a new maturity which is binding upon the creditor and prevents enforcement of the principal's liability that impairs the surety's right. If the creditor is not bound by the agreement and the principal's liability may still be enforced, what possible ground of complaint can the surety have, and how is he is any wise prejudiced? It is not necessary that the agreement of extension be void and not merely voidable, as is held by the learned judge writing the opinion of the Court of Civil Appeals. The effect of a judgment in favor of the bank upon the issue would be to make the agreement void *ab initio* and of no effect whatever. This court held in Benson v. Phipps, supra, in discussing the right of a surety under an extension agree-

ment, that "if the creditor is not bound by the promise to extend, it is clear there is no release," which we deem the correct rule.

If the fraud of the principal is sufficient to absolve the creditor from an agreement induced by it, as between himself and the principal, it ought to be sufficient, and we think it is, to prevent the surety from profiting by it to the destruction of the creditor's security. In the well considered opinion of Judge Key, in the case of Officer v. Marshall, 9 Texas Civ. App., 428, 29 S. W., 246, where the sureties claimed to have been released by an acceptance by the creditors of a renewal note to which the signatures of the sureties were forged, it is said: "When one is induced to enter into a contract by fraud practiced by the other party thereto, the contract is not binding upon the person defrauded, although the latter may have received a consideration. It follows, therefore, that if appellants accepted another note in payment of the one sued on, with appellees' names forged thereto, and they believed appellees' signatures to be genuine, the conduct of Marshall in presenting the forged note, and thereby procuring the note sued on, and an extension of time on the debt, was a fraud upon appellants, and, although he may have paid interest in advance, or some other valuable consideration, the agreement to extend the time was not binding upon appellants." Numerous other holdings are to the same effect. The principle announced in that case should control this one. As the Court of Civil Appeals has found that the evidence in the case was sufficient to raise the issue of fraud in the procurement of the bank's promise to extend the time of payment, it follows that its judgment and the judgment of the District Court should be reversed and the cause remanded to the District Court for the trial of the issue, and it is so ordered.

*Reversed and remanded.*