LIPSCOMB et ux v. WALKER et al.
(No. 5434.)†

(Court of Civil Appeals of Texas. San Antonio. March 10, 1915. Rehearing Denied April 14, 1915.)

BILLS AND NOTES ⬱139—MODIFICATION AND RENEWAL—EXTENSION—CONSIDERATION.

The payee's attorney told the maker that he did not want payment of notes due in May, 1914, but wanted a renewal and an extension to January, 1916, and that the renewal agreement would have to be made by July 4, 1914, and prepared a renewal or extension agreement for the maker to sign, but the maker did not agree to forego his right to pay off and discharge the note, and did not sign the agreement. *Held*, that there was no consideration for the extension agreement, and that the agreement to extend the time of payment to January, 1914, never having been executed, could not furnish consideration therefor.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 340–354; Dec. Dig. ⬱139.]

Appeal from District Court, Bexar County; W. F. Ezell, Judge.

Suit by W. W. Lipscomb and wife against G. C. Walker and another. Judgment for defendants, and plaintiffs appeal. Reversed, and judgment rendered for plaintiffs.

E. P. Lipscomb, of San Antonio, for appellants. Houston, Boyle & Storey, of San Antonio, for appellees.

FLY, C. J. This is a suit on two promissory notes and to foreclose a vendor's lien, instituted by appellants against G. C. Walker and W. P. Walker. Appellants sought to recover the principal, interest, and attorney's fees on said promissory notes. The principal and interest, after the suit was instituted, were paid in full, and the only contest in the trial court was as to the attorney's fees. The cause was tried by the court and resulted in a judgment for appellees.

To defeat the collection of attorney's fees, it was pleaded by appellees that learning that E. P. Lipscomb, the son of appellants, was the attorney of his mother, to whom the notes belonged as her separate property—

"they at once went to see said attorney, and told him that they wished to fix the matter, when the said E. P. Lipscomb told them, as his father had formerly done, that his mother did not want a payment of any of the principal of said notes, but wanted it to draw interest and a renewal of the notes, and extension to January 1, 1916, so that said renewal could be recorded, and stated to defendants that, by reason of some law passed by the Legislature, this renewal would have to be made by the 4th day of July, 1914, and these defendants then and there promised to sign said renewal within that time, on notice from said attorney. That after this, and a few days before the filing of this suit, defendants met the said attorney and fixed a time, to wit, July 1, 1914, for signing said papers, but on the next day, or a day or two afterwards, about one month before said time fixed, in utter disregard of their agreement and understanding, without any notice to these defendants, and without any demand for the payment of said notes, or any part thereof, said attorney filed this suit. Defendants further aver, in special defense of said suit, that the understanding and agreement by and between plaintiff W. W. Lipscomb and these defendants, the said attorney, as set out in the eighth, ninth, and tenth paragraphs of this amended answer, was a valuable consideration moving from these defendants to said plaintiffs for the extension and renewal of said notes and each of them, and defendants now plead said consideration in bar of plaintiffs' recovery of the amount of attorney's fees claimed herein, or any part thereof."

It will be noted that there is no allegation that appellees, in consideration for the delay in signing the extension, agreed to forego their right to pay off and discharge the notes, but G. C. Walker testified as follows:

"It was my understanding that we could pay off or call and sign a renewal of the notes, at any time before July 1st, and I never received any notice of a contrary understanding. I was able to pay off the notes."

That understanding of G. C. Walker arose from the last conversation he had with E. P. Lipscomb before the suit was instituted.

At the time of the last-mentioned conversation, appellees had not bound themselves to sign the renewal of the notes and no extension had been granted. All there was of that conversation, according to appellees' testimony, was a naked promise to wait until July 1st, about six weeks, for appellees to sign the contract of extension or pay off the notes. There was no consideration given for the six weeks' extension. Appellees could have paid off the notes the next day, and appellants could not have objected. It is not claimed by appellees that they agreed to forego the right to pay off the notes at any time,

but they claim that the consideration was the agreement by appellants to give them until July 1st to sign the extension contract and their acceptance of the same. That is no consideration, under the law. There was no positive promise to not pay off the notes and to sign the renewal contract. As found by the trial judge:

"At the time of the filing of the suit, there existed between plaintiffs and defendants a mutual agreement to the effect that at any time before July 1, 1914, defendants could pay off or sign the contract to pay said notes on January 1, 1916."

The learned judge who tried the case concluded that the agreement to extend the time of payment of the notes until January 1, 1916, was a sufficient consideration for the extension from May 20th until July 1, 1914. The agreement to extend the notes until January 1, 1916, had never been executed, and could furnish no consideration for another agreement. There was no extension until January 1, 1916, and appellees had it in their power to prevent any such extension ever being executed. They could pay off the notes at any time. There must be mutuality in a contract to render it legal and binding.

In the leading Texas case of Benson v. Phipps, 87 Tex. 578, 29 S. W. 1061, 47 Am. St. Rep. 128, which goes as far as any case should go on the subject, it was held:

"In case of a debt which bears interest either by convention or by operation of law, when an extension for a definite period is agreed upon by the parties thereto, the contract is that the creditor will forbear suit during the time of the extension, and the debtor foregoes his right to pay the debt before the end of that time. The latter secures the benefit of the forbearance; the former secures an interest-bearing investment for a definite period of time. One gives up his right to sue for a period in consideration of a promise to pay interest during the whole of the time; the other relinquishes his right to pay during the same period, in consideration of the promise of forbearance."

Seeking to reconcile that case with others seemingly in conflict with it, the court said:

"In many cases which seemingly support the contrary doctrine, there was a mere promise by the creditor to forbear, without any corresponding promise on part of the debtor not to pay during the time of the promised forbearance. In such cases, it is clear that there is no consideration for the promise."

Certainly there was no promise, on the part of the debtors, in this case, not to pay during the time of the verbal extension, but the absolute right to pay was reserved. It is not pleaded nor attempted to be proved that the debtors deprived themselves of the right to pay.

A case very similar in its facts to this is Austin Real Co. v. Bahn, 87 Tex. 582, 29 S. W. 646, 30 S. W. 430, in which the court said:

"Here the creditor agrees to extend for one week, and the debtor agrees to pay within the week. He does not agree that he will not pay until the end of the week, or, * * * in case

he does pay, he will pay interest for the entire period of the extension. Hence there was no consideration for the promise of the creditor."

See, also, Roberds v. Laney, 165 S. W. 114.

No written extension was executed in this case, because the one drawn up and signed by appellants was never executed by appellees. The case must turn on the verbal agreement to not sue until July 1, 1914, and, as hereinbefore indicated, there was no consideration whatever for that promise. It would be an absurdity to contend that the payment of the note was extended for 17 months, when appellees never signed such agreement and were in no wise bound by it. Tunstall v. Clifton, 49 S. W. 244. The evidence showed authority on the part of the attorney to collect the amount of the notes or to grant an extension on the same. The notes were past due and unpaid.

Appellees did not offer to sign the written contract of extension at any time after the alleged agreement with the attorney, and did not consider that they were bound by it because they claimed the right to pay the notes off or sign the contract as they might desire. There was no written contract binding on appellees, and they did not so claim in the lower court. The only contract of extension was the verbal one testified to by G. C. Walker. In justice to E. P. Lipscomb, who Walker swore made the oral contract, it will be stated that Lipscomb swore positively that he made no such agreement with Walker.

The judgment is reversed, and judgment here rendered that appellants recover of appellees the sum of $812.26 attorney's fees, the same being 10 per cent. of the sum of $8,122.69, the amount paid on the notes on October 3, 1914, together with 6 per cent. interest on said attorney's fees from said date and all costs in this behalf expended.