C. C. SLAUGHTER CO. v. ELLER et al. (No. 1175.)

(Court of Civil Appeals of Texas. Amarillo. May 23, 1917. Rehearing Denied June 27, 1917.)

1. PRINCIPAL AND SURETY ⚎106—EVIDENCE —CONSIDERATION.

An agreement by the payee of notes to give the maker a reasonable time in which to sell property and liquidate the indebtedness is not too indefinite to form the basis for extension, if based on consideration.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 211, 212.]

2. CONTRACTS ⚎214 — TIME OF PAYMENT — CONTINGENCY.

Where a contingency for the payment of an indebtedness is provided, the debt will become due upon the happening of the contingency, and in any event after the expiration of a reasonable time has elapsed, for it to have been brought about.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 980–995.]

3. PRINCIPAL AND SURETY ⚎105(1)—EXTENSION—CONTINGENCY—CONSIDERATION.

If a note could have originally been made payable at a time to be determined by a con-

tingency, extension may be made on the same terms if supported by consideration.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 196, 201, 203–210.]

4. PRINCIPAL AND SURETY ⚎108(3)—EXTENSION—INTEREST.

Where an agreement for extension of notes by its terms purported to bind the payee of the note to wait for the payment of the indebtedness until the maker could sell property, it would be implied that the maker was to continue to pay interest until the indebtedness was paid.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 215.]

5. PRINCIPAL AND SURETY ⚎105(1)—AGREEMENT FOR EXTENSION—MUTUALITY.

As an agreement for extension of time for payment of an indebtedness must be mutual, the payee must not only be bound by such agreement to wait for such time of payment, but the maker must be bound not to make the payment before such time.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 196, 201, 203–210.]

6. PRINCIPAL AND SURETY ⚎161 — DISCHARGE—EXTENSION OF TIME OF PAYMENT—EVIDENCE.

In an action against sureties on notes, evidence *held* not to show that at the time of an agreement for the extension of time for payment until the maker could sell property, it was understood between the parties that the maker was to be bound not to pay the indebtedness until the property was sold, or until after the lapse of a reasonable time therefor, and hence the agreement would not furnish its own consideration.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 85, 439–441.]

7. PRINCIPAL AND SURETY ⚎104(1) — DISCHARGE—AGREEMENT FOR EXTENSION—VALIDITY.

If the payee of a note bound himself by an agreement founded on a good consideration to forbear until the property could be sold, the sureties would be released, notwithstanding that the maker might have the privilege of paying at any time, since a creditor may make an agreement by which he cannot enforce collection before a stated time, though the debtor may have the option of paying at any time.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 197.]

8. PRINCIPAL AND SURETY ⚎108(2) — DISCHARGE—EXTENSION—CONSIDERATION.

If property was transferred to the payee of a note as additional security pursuant to an agreement for extension of time of payment, such conveyance would be sufficient consideration for the agreement, so as to discharge sureties, although if such property was conveyed prior to the agreement pursuant to other independent agreements, so that the alleged agreement conferred no additional rights on the payee, the transaction would afford no consideration for the agreement to forbear.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 214, 218.]

9. PRINCIPAL AND SURETY ⚎162(3)—TRIAL—SPECIAL ISSUES.

In an action against sureties on notes in which the court submitted the question of consideration of an agreement by the payee to forbear, in effect asking the jury to find if in consideration of any conveyance of property by him, the payee agreed with the maker that the time of payment should be extended for reasonable time to dispose of such property and what was a reasonable time, refusal of a requested charge that if the only property conveyed to

the payee in consideration of the agreement, if any, was conveyed before the agreement, the submitted issue as to the consideration, should be answered, "No," was error.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 444.]

10. PRINCIPAL AND SURETY 161 — EXTENSION—CONSIDERATION.

Fact that it was customary for the maker of promissory notes to convey property to secure them would not of itself impose an obligation to continue the custom or show that property was not conveyed as consideration for agreement to extend time of payment of notes, so as to discharge sureties.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 85, 439–441.]

11. USURY 127 — EFFECT — DISCHARGE OF SURETY.

That a contract is usurious does not entirely discharge the sureties, and they would be liable for the payment of the principal.

[Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 365–379.]

12. USURY 113—EVIDENCE—PRESUMPTION.

To constitute usury within the prohibitions of the law, there must be an intention knowingly to contract for or to take usurious interest, and although where the contract reserves more than legal interest, there is no room for presumption, where the contract on its face is for legal interest only, it must be proved that there was some corrupt agreement or device or shift to cover usury, and that it was within the full contemplation of the parties.

[Ed. Note.—For other cases, see Usury, Cent. Dig. § 25.]

13. USURY 11—DEFINITION.

Any advantage or benefit exacted, which, added to the interest reserved, increases the compensation received for the loan to an amount in excess of the lawful interest, constitutes usury; and if, as a part of the transaction, the borrower is required to buy or sell property at an exorbitant or inadequate price, and this is a cloak or device to disguise the true character of the transaction, it will not avail against the plea of usury.

[Ed. Note.—For other cases, see Usury, Cent. Dig. § 1.

For other definitions, see Words and Phrases, First and Second Series, Usury.]

14. USURY 12—DEFINITION—COLLATERAL CONTRACT.

A collateral transaction between the borrower and lender, whereby the lender may take profit, will not render the loan usurious when such transaction was entered into in good faith and without usurious intent.

[Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 23–24, 126.]

15. USURY 65—USURIOUS CONTRACT—EXTENSION OF PAYMENT OF NOTES.

Where a contract for the extension of time of payment of a note provided means by which the payee might keep informed of the condition of the maker's business and prevent a use of the funds other than in the business which the payee was financing, and the intention of the terms by which this was to be accomplished, necessarily imposed some labor on the payee, a contract allowing greater than legal interest was not necessarily usurious, as the borrower might legitimately agree to compensate the lender for services performed in the interest of the lender, and whether or not it was usurious depended on the intention of the parties.

[Ed. Note.—For other cases, see Usury, Cent. Dig. § 138.]

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Suit by the C. C. Slaughter Company against R. C. Eller and others. Judgment for plaintiff against the named defendant only, and plaintiff appeals. Reversed and remanded.

Towne Young and Carden, Starling, Carden, Hemphill & Wallace, all of Dallas, for appellant. Dinsmore, McMahan & Dinsmore, of Greenville, and Etheridge, McCormick & Bromberg, of Dallas, for appellees.

BOYCE, J. This suit was brought by appellant, C. C. Slaughter Company, against R. C. Eller, J. B. Rabb, and J. C. Erwin, on a promissory note for $5,676.39, dated September 1, 1910, payable nine months after date, executed by R. C. Eller and J. B. Raab, indorsed by J. C. Erwin, payable to C. C. Slaughter, and by him transferred after maturity to appellant corporation. Raab and Erwin were sureties, and they defended on the ground that they had been released by an alleged agreement made without their consent between Slaughter and Eller, by which in consideration of the conveyance to Slaughter by Eller of certain real and personal property, the time of the payment of said note was extended for such reasonable length of time as would enable the said parties to dispose of such property and apply the proceeds to the payment of said indebtedness, it being alleged that such reasonable time was a period of two years. A trial in the court below resulted in judgment for appellant C. C. Slaughter Company on the note against Eller only.

The evidence shows that some time prior to the execution of the note in question Eller, being desirous of securing the agency for the sale of the Pierce-Arrow automobiles, at Dallas, Tex., obtained of C. C. Slaughter a loan of $10,000 to secure funds to enable him to handle the business. $5,000 of this fund was evidenced by the unsecured note of Eller, and the other $5,000 was evidenced by a note for that amount executed by the said Eller, with appellees Raab and Erwin as sureties; the note sued upon being a renewal of the last-mentioned note. In addition to this loan the said C. C. Slaughter from time to time loaned Eller the money with which to pay for automobiles as they arrived from the factory, with the agreement that as the automobiles were sold the proceeds less a certain per cent. of the agent's profit, would be applied in payment of Eller's indebtedness. In making sales in some instances secondhand cars were taken in part payment, and these secondhand cars sold, either on credit, or in exchange for real estate. In 1912 the indebtedness of the said Eller to Slaughter amounted to about $46,000, and Eller was in financial distress. To secure the payment of his indebtedness he delivered to Slaughter cer-

For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

tain notes, automobiles, accounts, etc., and conveyed by warranty deeds certain real estate, all being valued at about $32,000. The evidence as to the time when this was done will be more particularly referred to hereafter. Eller ceased to do business during the summer of 1912, and in October, his indebtedness to Slaughter being then past due, approached Slaughter and requested that an opportunity be given him to sell the real property referred to and liquidate his indebtedness, stating that he thought there was a margin of profit to be obtained from the sale of the real estate; Slaughter replied to this request that all he wanted was his principal and interest, and bade Eller go ahead and do the best he could with it. The general result of this interview in its most favorable aspect to the appellees is thus stated by the witness Eller:

"In that conversation it resulted in Colonel giving me a reasonable time or an extension of my indebtedness for a reasonable time to sell these real estate properties that he had as security, and he told me that he was not going to bother the sureties, and told me to act accordingly. He promised to do that. The time that he was to give me on the indebtedness was a reasonable time to sell the real estate properties. * * * The agreement was that he was to extend our indebtedness for a reasonable time for me to sell that and get the benefit of it, and to give him the proceeds and get the benefit of it."

All of Eller's indebtedness was represented by notes bearing interest at the rate of 10 per cent. per annum from their respective dates.

[1-3] We do not think that Slaughter's agreement to give Eller a reasonable time in which to sell the property was too indefinite to form the basis of a binding agreement for extension, provided there was any consideration for the agreement. Where such a contingency for the payment of an indebtedness is provided the debt will become due upon the happening of the contingency and in any event, after the expiration of a reasonable time has elapsed for it to have been brought about. Boesen v. Potter County, 173 S. W. 462; Nunez v. Dautel, 19 Wall. 560, 22 L. Ed. 161; Hicks v. Shouse, 56 Ky. (17 B. Mon.) 483; Noland v. Bull, 24 Or. 479, 33 Pac. 983; Hughes v. McEwen (Miss.) 72 South. 848; Schweitzer v. Schweitzer (Ky.) 82 S. W. 625; Feller v. McKillip, 109 Mo. App. 61, 81 S. W. 641. If the note could have originally been made payable at a time to be determined by such a contingency, no reason is perceived why an extension may not be made on the same terms. Such an agreement, like any other, however, must be supported by a consideration, and the principal question in this case is as to whether the agreement on Slaughter's part to give Eller time to sell the property and pay the indebtedness out of the proceeds is supported by any consideration. The appellant asserts that there is no consideration for the agreement, and the appellees assert that there are two sufficient considerations for the contract: (1) The implied agreement on the part of Eller to pay interest during the time of extension; (2) the transfer of the property to Slaughter as security for the debt. And we will consider the question in relation to these two different suggestions in the order stated.

[4, 5] There is no express finding of the court or jury as to the first matter, but the appellee insists that the evidence is sufficient to support a finding of such fact, and it will be presumed in favor of the judgment that it was so found by the court. The agreement by its terms purported to bind Slaughter to wait for the payment of the indebtedness until Eller should have an opportunity of selling the property, and it would be implied that Eller was to continue to pay interest until the indebtedness was paid; but under our decisions before the agreement would be held to furnish its own consideration it must be mutual, that is, Slaughter must not only be bound to wait for such time for the payment, but on the other hand, Eller must be bound not to make the payment before such time. Austin Real Est. & Abstract Co. v. Bahn, 87 Tex. 582, 29 S. W. 646, 30 S. W. 430; Benson v. Phipps, 87 Tex. 578, 29 S. W. 1061, 47 Am. St. Rep. 128; Consumers' Fertilizer Co. v. Badt, 157 S. W. 227; Webb v. Pahde, 43 S. W. 19; Lipscomb v. Walker, 175 S. W. 449.

[6] We have read the entire testimony of the witness Eller, on whose evidence appellees rely to support their contention on this issue, and we conclude that it cannot be fairly deduced therefrom that it was agreed or understood between the parties that Eller was to be bound not to pay the indebtedness until the property was sold or until after the lapse of a reasonable time for the sale. The testimony shows that Eller was hopelessly involved financially. His highest estimate of the value of the property which was turned over to Slaughter fell short of the amount he owed Slaughter. Estimating the properties at the valuation placed upon them at the time by the parties, there was not enough to pay Slaughter, even if this note were paid in full; and, under these circumstances, Eller was pleading for time in order to get as much out of the property as possible, and thus save as much as possible for his sureties. The following excerpt from the testimony of the witness gives, we think, a fair conception of the understanding reached by the parties at this time:

"I told the Colonel we appreciated the opportunity which he was extending to us to clean up the business without involving our indorsers very greatly, and that we would so advise them, and that we would never stop our exertions until he was paid in full. The Colonel says, 'Just go ahead and do the best you can.' The substance of what Col. Slaughter said to me after I had made my explanation to him and gone over my business with him was that he would forbear with me, give us a chance to work out our business, without involving anybody, without calling on our indorsers or sure-

ties to pay this for us. Col. Slaughter told me in this conversation in October that if this property could be sold for more than what was recited in the deed than the agreed price at that time that we should have the benefit of the increase. He said he would give us a reasonable time in which to dispose of this property. He said he would give us time to liquidate the business and sell these properties. He did not give me any definite time other than I have stated. He said he would give me a reasonable time in which to pay this note."

[7] So that we conclude that while Slaughter agreed to wait Eller was not bound not to pay at any time, and the agreement would not be binding on Slaughter unless supported by some further consideration. The fact that Eller may not have been bound not to pay before the property was sold is only important, however, in relation to the question of whether there was any consideration for Slaughter's agreement to wait. It is the fact that the hand of the creditor is stayed by a binding agreement that releases the surety (Red River National Bank v. Bray, 105 Tex. 312, 148 S. W. 290); and if Slaughter bound himself by an agreement founded in a good consideration to forbear until the properties could be sold the sureties would be released, notwithstanding that Eller might have the privilege of paying at any time, for it cannot be doubted that a creditor may make an agreement by which he cannot force collection before a stated time, though the debtor may have the option of paying at any time, a familiar instance of which is found in notes payable "on or before" a specified date. It then becomes necessary to consider appellee's second contention that the transfer of the property to Slaughter, as security for the indebtedness, was a sufficient consideration for this agreement on Slaughter's part.

[8] We may say generally that if it be true that any property was transferred to Slaughter as additional security in pursuance to the agreement it would be a sufficient consideration for the agreement on Slaughter's part. Carter-Battle Grocer Co. v. Clarke, 91 S. W. 880; Corpus Juris, vol. 8, p. 438. Appellant contends, however, that all of such property was conveyed to Slaughter prior to this agreement or in pursuance to other and independent agreements, by which all of such property was to constitute security for such indebtedness, and that this alleged agreement conferred no rights on Slaughter in respect to said properties that he did not already have. If this be true then the transaction would afford no consideration for Slaughter's agreement to forbear. Knotts v. Virginia-Carolina Chemical Co., 204 Fed. 926, 123 C. C. A. 248. The evidence shows that all of the personal property had been delivered to Slaughter, and all of the real estate, except 13 lots in the Belmont addition to the city of Dallas, had been conveyed to him by general warranty deed prior to this agreement in October, 1912. The deed to the lots in the Belmont addition was executed in April, 1913; the

evidence shows, however, that there had been at least an attempt on the part of Eller, prior to the execution of the deed, to grant a lien on this property to Slaughter. After the agreement of October, 1912, an indebtedness, amounting to something over $9,000, payable to third parties, and secured by prior lien on the Belmont lots, became due, Eller being unable to pay it and Slaughter paid off this indebtedness, took a transfer of this lien, and Eller subsequently conveyed the property to him. Appellant claims that as Slaughter already had a lien on the Belmont property, and that its subsequent conveyance was made in order to perpetuate this lien, and to secure an indebtedness subsequently created, and was independent of the agreement of October, 1912, the transaction can afford no consideration for that agreement.

[9] While the evidence tends strongly to show that this is true, and does, we think, conclusively show that all of the other property had already been conveyed to Slaughter, the evidence does not disclose very satisfactorily just what the rights of the parties, with respect to said properties, and particularly the Belmont property, were at the time of the agreement of October, 1912, so that we are not prepared to hold that there is no evidence to support a finding that there was no consideration for the agreement for extension. We therefore overrule appellant's first, second, third, and fourth assignments.

The court submitted the question of consideration to the jury in the following language:

"(2) Did C. C. Slaughter, in consideration of any conveyance of property to him by R. C. Eller, agree with said R. C. Eller that the time of payment of the said note herein sued upon should be extended for such reasonable length of time as would enable the said R. C. Eller to dispose of the properties which were by the said R. C. Eller turned over or conveyed to the said C. C. Slaughter? If yes, what do you find from the evidence would be such reasonable time?" To which the jury answered, "Yes; two years."

The appellant requested the court to charge the jury in connection with this issue as follows:

"If you find and believe from the evidence that the only property, if any, conveyed to C. C. Slaughter by R. C. Eller, in consideration of an agreement, if any, with the said R. C. Eller, that the time of payment of the note herein sued upon should be extended for such reasonable length of time as would enable him, the said R. C. Eller, to dispose of said property, if any, was conveyed before the said agreement, if any, then you will answer question No. 2, 'No.'"

We think the charge requested should have been given. What we have said in our previous discussion shows the propriety and necessity for such an instruction, particularly in view of the wording used by the court in the submission of the issue. Sanger v. First National Bank, 170 S. W. 1087.

[10] The sixth assignment complains of the refusal of the court to give, in connection with the submission of said issue No. 2, as above quoted, a charge to the effect that if

the only property turned over to Slaughter by Eller "was in due course and customary way of conducting business and without agreement as to application upon any particular indebtedness of Eller," then the jury should answer "No" to said issue. If Eller was legally bound to execute the conveyances or had already done so, and the agreement conferred no additional rights upon Slaughter, or imposed no additional obligations on Eller, then such conveyances would furnish no consideration; but we do not think a custom of dealing would alone be sufficient to impose an obligation to continue it. We overrule this assignment.

The appellees also pleaded that the contract was usurious. Prior to the execution of the note Slaughter and Eller entered into a written contract which provided for the loan to Eller of $10,000 for the purpose of securing the agency of the Pierce-Arrow automobiles. This contract further provided that the money borrowed should be deposited with the American Exchange National Bank; that all proceeds of the sale of cars should be deposited with said bank, and the said C. C. Slaughter furnished with duplicate deposit slip of all deposits; that said funds might be checked out only in pursuance to the terms of the agreement for certain purposes, which are not necessary to be stated here, and that all checks on said account should be countersigned by C. C. Slaughter, Jr. This contract further provided that if Slaughter should desire to purchase a Pierce-Arrow automobile Eller would sell it and extras and accessories to him at a 20 per cent. discount from the selling price. This was the cost price to Eller. Slaughter afterwards bought an automobile at such cost price in pursuance of the terms of this agreement.

[11, 12] If the contract be usurious we do not understand that the sureties would be entirely discharged, but would be liable for the payment of the principal. Roberts v. Coffin, 22 Tex. Civ. App. 127, 53 S. W. 597; Cyc. vol. 39, p. 1075. So that as the question is in no event decisive of this appeal, we will not consider the assignments on this question in detail, but state the law as we understand it as applicable to the facts of the case for guidance of the court upon another trial. A general statement of the law is made by the Supreme Court of the United States, in the case of Bank of U. S. v. Waggener, 9 Pet. 400, 9 L. Ed. 171, as follows:

"The uniform construction in England has been, and it is equally applicable here, that to constitute usury, within the prohibitions of the law, there must be an intention knowingly to contract for or to take usurious interest; or if neither party intend it, but act bona fide and innocently, the law will not infer a corrupt agreement. Where, indeed, the contract, upon its very face, imports usury, as by an express reservation of more than legal interest, there is no room for presumption, for the intent is apparent; res ipsa loquitur. But where the contract on its face is for legal interest only, there

it must be proved, that there was some corrupt agreement, or device or shift, to cover usury, and that it was in the full contemplation of the parties."

See, also, Peightal v. Cotton States Building Co., 25 Tex. Civ. App. 390, 61 S. W. 431; Southern Trading Co. v. State National Bank, 35 Tex. Civ. App. 5, 79 S. W. 644; Leary v. Loan Association, 93 Tex. 1, 49 S. W. 633, 51 S. W. 836; 39 Cyc. 897; Webb on Usury, § 33.

[13, 14] It is also stated generally that any advantage or benefit exacted which, added to the interest reserved, increases the compensation received for the loan to an amount in excess of the lawful interest constitutes usury, and if as a part of the transaction the borrower is required to buy or sell property at an exorbitant or inadequate price, as the case may be, and this is a cloak or device to disguise the true character of the transaction, it will not avail against the plea of usury. Bishop v. Bank, 114 Ga. 962, 41 S. E. 43; Martin v. Reese (Tenn. Ch. App.) 57 S. W. 422; Saxe v. Womack, 64 Minn. 162, 66 N. W. 269; In re Atwood, 40 App. Div. 272, 57 N. Y. Supp. 1031. Cyc. states the law with reference to the benefits acquired by a collateral transaction thus:

"Nor will a collateral transaction between the borrower and lender, whereby the lender may take profit, render the loan usurious when such transaction was entered into in good faith and without usurious intent." Cyc. vol. 39, p. 971.

See, also, Webb on Usury, § 315.

[15] The contract in this case provided the means by which Slaughter might keep informed of the condition of Eller's business and prevent a use of the funds other than in the business which Slaughter was financing. The attention to the details by which this was to be accomplished necessarily imposed some labor. The borrower might legitimately agree to compensate the lender for services of such character, although performed in the interest of the lender (Houghton v. Burden, 228 U. S. 161, 33 Sup. Ct. 491, 57 L. Ed. 780; 39 Cyc. 981), provided always that such charges are not made a mask behind which to conceal the true purpose of the parties. We think the contract in this case is not necessarily usurious, but whether it is or not would be dependent upon the intention of the parties, to be ascertained in accordance with the principles announced in the foregoing authorities.

Judgment reversed, and cause remanded.