## MARSH vs. HOWE.

36 649
77h 574

An agreement by a borrower, to pay a subsisting debt of his own, in consideration of a new credit, or a further loan, is not usurious, if the promise is to pay only the amount actually due on the old debt, and the amount of the loan with lawful interest.

A statement made to an attorney is no more privileged than one made to any other person, unless it is made for the purpose of obtaining professional advice on the subject of such statement.

If it is a statement which has no reference to the professional employment, it falls within the exception to the rule of exclusion, although made while the relation of attorney and client exists.

Accordingly *held* that a statement made by a client, to an attorney, about two years and a half after the latter had obtained a judgment in favor of the former, against D., and several months after the judgment had been assigned by the plaintiff therein to another person, as to the payment of that judgment, was not a privileged communication between attorney and client; the relation of attorney and client, in respect to the action in which the judgment was obtained, being then at an end.

*Held, also*, that it was a matter of no moment, so far as related to that question, that the person to whom the statement was made was, at the time, the attorney of the party making it, in another matter, and that they had just before been in consultation in respect to such other matter.

APPEAL from a judgment on a verdict. The action was brought on a promissory note for one thousand dollars, dated July 2, 1859, made by the defendant Howe, payable three months after date, to the order of the defendant Duckinfield, and indorsed by him. Defense, *usury*. The answer alleged, in substance, that the note in suit was given in renewal of the balance of a previous note for the same amount, made and indorsed by same parties, and given for one thousand dollars loaned by the plaintiff to Howe; and that by the terms of the agreement, and as a condition of the loan, Howe agreed to purchase, and did purchase, of the plaintiff a worthless judgment held by him against Enoch S. Duckinfield, who was insolvent, for the sum of one hundred and eighty-one dollars and fifty-two cents, and paid that sum therefor.

On the part of the plaintiff, it appeared that Enoch S. Duckinfield had carried on the business of malting, at Phelps, several years next prior to the 6th of October, 1858; that a

short time before that date, he applied to the plaintiff, who was a farmer, to sell him the plaintiff's crop of barley, and to lend him money; that the plaintiff then had a demand against him of about one hundred and eighty dollars, which was in judgment; that it was proposed that the plaintiff should sell him the barley, and lend him money enough, with the price of the barley and the amount of the judgment, to make one thousand dollars, and give a credit of four months, provided Duckinfield would give security; that Duckinfield proposed Howe as surety, and the plaintiff consented to take him, and thereupon it was agreed to meet on the 7th of October and consummate the arrangement; that all the parties met on that day at the malt-house, and Howe, after saying that Enoch had spoken to him about an arrangement for some money, took the plaintiff aside, and stated to him that he and Enoch had made a contract to go into the malting business together, and divide profits equally; that he would give his note for the one thousand dollars, and George Duckinfield, the father of Enoch, would indorse it; that it would not do for Enoch to be known, as he was involved; that all the business was to pass through Howe's hands, and there was an agreement between him and Enoch that he was to take the amount of the judgment out of Enoch's share of the profits; he also said there was a quantity of barley at the malt-house that would pass through his hands. The plaintiff and Howe then joined the Duckinfields, and the transaction was consummated in the mode proposed by Howe. After these facts were testified to by the plaintiff, Howe was examined in his own behalf, and although his attention was called to them, he did not deny them, but admitted them in part, and as to some points disclaimed recollection. It also appeared that in 1858 Enoch Duckinfield commenced carrying on the malting business in the name of his father, and that on the 6th of October in that year his father and Howe agreed, in writing, to carry on the business as partners, and that Enoch should be employed, at his father's expense, as

clerk and agent, to superintend the business in all its parts, subject to the direction of Howe in the purchase and sale of barley, rye and malt. The partnership term provided for by this agreement expired on the first day of June, 1859, and at that time it was arranged that Howe might run the establishment the next year, to make up the last year's loss; and Howe testified that it was arranged that Enoch should have his living out of it; but it was proved that Howe stated, in the fall of that year, that Enoch was to have half of the profits, after paying the men's board. This arrangement was in force when the renewal not in suit was given. At the expiration of that arrangement, Howe rented the establishment of George Duckinfield, and arranged with Enoch to take charge of it, and to apply one half of the net profits towards paying Enoch's indebtedness to Howe.

The defendant proved the note of $1000, which was renewed by the note in suit, and the alleged assignment of the judgment, and the note given for the same, which were all made on the 7th day of October, 1858. He then called Charles E. Hobbie, Esq., who testified that he had a conversation with the plaintiff in March or April, 1860, in which the latter, after having finished a consultation with the witness about a matter between himself and Austin Salisbury, said, "I have succeeded in getting my pay, or collecting the Duckinfield judgment." The defendant's counsel then asked the witness this question: "How did he say he got his pay?" The plaintiff's counsel, to lay the foundation for an objection to the question, cross-examined the witness, who testified that he was at the time of the conversation, and then was, an attorney and counsellor of this court, and that he was the plaintiff's attorney in the suit against Duckinfield, and as such sued the demand for him, and got it into judgment. The witness had before testified, on the direct examination, that this conversation came up incidentally after the other case had closed, and that in it he was not acting as the plaintiff's counsel or attorney. The plaintiff's counsel then

objected to the question, on the ground that the communication called for by it was a privileged one, as between attorney and client, and the objection was sustained by the court, and the defendant's counsel excepted.

The testimony was conflicting as to whether the loan was made to Howe or to Enoch S. Duckinfield. The judge charged the jury, in substance, as follows: That if they believed from the evidence that the loan for which the first thousand dollar note was given was made to the defendant Howe alone, or to the defendant and Enoch S. Duckinfield as copartners, and the plaintiff imposed as a condition of the loan that Howe, or Howe and Duckinfield, should purchase the judgment against Enoch S. Duckinfield at the price of $181.52, and that Enoch S. Duckinfield was wholly insolvent at the time of such loan, and had no means of paying any part of such judgment, and that the plaintiff knew it; and that the note in suit was taken in renewal of the first thousand dollar note, then the whole transaction was usurious and the note in suit void, and in that case they should find for the defendant. But if they believed from the evidence that such loan was made to Enoch S. Duckinfield alone, the note in suit was valid, and they should find for the plaintiff the amount of the note, with interest.

The jury rendered a verdict for the plaintiff for ten hundred and ninety-four dollars and fourteen cents, and the defendant appealed from the judgment entered thereon.

*D. Herron*, for the appellant.

*Smith & Lapham*, for the respondent.

*By the Court*, JOHNSON, J. The charge to the jury that if they believed, from the evidence, that the loan was made to Duckinfield alone, the note was valid, was unquestionably correct. If such was the fact, it was simply an agreement on the part of the borrower to pay a subsisting debt of his

own, in consideration of a new credit, or a further loan. There can be no usury in such an agreement if the promise is to pay only the amount actually due on the old debt, and the amount of the loan with lawful interest. I think there was sufficient evidence upon the subject, to authorize the submission of that question to the jury.

But the exclusion of the evidence proposed to be given on the part of the defendant by the witness Hobbie was, I think, clearly erroneous. It was certainly material, in view of the questions tried and submitted to the jury. Indeed, there is no pretense on the part of the plaintiff that it was not material to the issue. It was objected to and excluded on grounds which assumed its materiality, and it is impossible for the court here to see how its admission would have affected the minds of the jury. It was objected to and excluded upon the ground that it was a confidential communication from a party to his attorney, and therefore privileged. It will be seen, however, upon looking with a little care at the evidence on the subject, that the communication sought to be proved, did not partake at all of the character of a privileged communication. The witness had been the attorney of the plaintiff, in the action in which the judgment was obtained. But the communication was made about two years and a half after the judgment was obtained, and several months after the plaintiff had assigned it to the defendant in this action, and had ceased to have any interest in it, or connection with it. The relation, therefore, had entirely ceased between them, in respect to that demand or its enforcement. The witness expressly testified that the conversation came up incidentally between himself and the plaintiff, and that he was not acting as the plaintiff's attorney in respect to the subject of it. It was, plainly, a mere casual statement as to the manner in which a matter had been a long time before disposed of, and about which the plaintiff, so far as appears, neither desired nor sought any advice or counsel. It does not, therefore, come at all within the class

of privileged communications between attorney and client. It is a matter of no moment whatever, as regards this question, that the witness was at the time the attorney of the plaintiff in another matter, and that they had just before been in consultation in respect to such other matter. That gave the plaintiff no privilege whatever in respect to statements made upon other subjects wholly foreign to the one on which the advice and counsel had been just previously sought. A statement made to an attorney is no more privileged than one made to any other person, unless it is made for the purpose of obtaining professional advice on the subject of such statement. If it is a statement which has no reference to the professional employment, it falls within the exception to the rule of exclusion, although made while the relation of attorney and client exists. (1 *Greenl. Ev.* § 244. 1 *Phil. Ev.* 145. 2 *Starkie's Ev.* 230, 231.) This is the rule in all the standard works upon evidence, and no case can be found to the contrary. If the statement had been made with a view of obtaining professional advice from the witness, in regard to the validity of the transaction, of which the assignment was a part, it would have been privileged. But the evidence expressly negatives this, and shows that it was made merely for the purpose of conveying a piece of information. I have assumed, from the facts disclosed by the evidence, that the relation of attorney and client was at an end, as regards the action in which the judgment assigned was obtained. I think it needs no argument to fortify this assumption. A bare statement of the facts will show most conclusively that the relation growing out of that employment was no longer subsisting when the statement in question was made. Not only was the action at an end, but the plaintiff had, long before, ceased to have any interest in, or connection with, the fruits of the litigation. The foundation of the relation was gone, as much as though the judgment had been paid in money. The witness was not even the attorney of the assignee of the judgment. The case of

*Williams* v. *Fitch,* (18 *N. Y. Rep.* 546,) relied upon by the plaintiff's counsel, is in no respect adverse to the foregoing views, but is entirely in accordance with them. In that case the statement was upon the very subject of the professional employment.

The judgment must therefore be reversed and a new trial ordered, with costs to abide the event.

[MONROE GENERAL TERM, June 2, 1862. *Johnson, Welles* and *Smith,* Justices.]