### SOUTHERN TRADING COMPANY v. STATE NATIONAL BANK OF FORT WORTH.

Decided February 27, 1904.

**1.—Usury—Penalty—Agreement of Indemnity.**
    One who has not promised or paid usury to a bank on a loan made by it, but has merely agreed to indemnify the bank against a judgment collaterally connected with the loan as to which usury is claimed, has no right to recover a penalty for usury which he can assign to another.

**2.—Same—Loan on Condition of Paying Another Debt.**
    The fact that upon a loan of money by a bank it exacts as a condition to making the loan that the borrower shall secure to it the payment of another genuine and subsisting debt to it for which the borrower is liable, does not render the loan usurious; nor is the case altered by the fact that the other debt is of such nature that the borrower, upon paying it, can not have contribution from the other parties jointly liable with him therefor.

Appeal from the District Court of Tarrant. Tried below before Hon. M. E. Smith.

*Bomar & Bomar,* for appellant.

*W. P. McLean,* for appellee.

SPEER, ASSOCIATE JUSTICE.—Appellant, the Southern Trading Company, a corporation, instituted this suit under section 5198 of the Revised Statutes of the United States, to recover from appellee, a national bank, about $20,000 as a penalty for illegally demanding and receiving usury upon a loan of money. The Citizens Light and Power Company of Fort Worth, another corporation, intervened. The trial court, after the evidence was in, instructed a verdict for the defendant; hence this appeal.

No useful purpose would be subserved by a statement in detail of the evidence, but we will content ourselves with brief conclusions as to the facts established by the uncontroverted testimony.

G. E. and R. I. White were at one time largely indebted to the State National Bank, probably as much as $50,000, and to one A. D. Thomas in the sum of about $5000. W. B. and John C. Harrison, president and cashier, respectively, of the bank, also became liable with the Whites upon the indebtedness to the bank. At a meeting of the directors of the Standard Light and Power Company, at which were present the Harrisons and Whites, it was resolved to pay to C. E. White, president of the company, and R. I. White, the manager, and to John C. Harrison, the secretary and treasurer, salaries amounting in the aggregate to $500 per month, the same to be credited on the indebtedness of the Whites to the bank. Thomas brought suit against the Whites, the Harrisons and the State National Bank to recover back the sums thus paid as salaries, for the benefit of the Standard Light and Power Company, alleging a fraudulent conspiracy among the parties named. This resulted in a judgment for about $9000 against all the parties, it being

held, however, that the amount paid to John C. Harrison was a proper item of expenditure. This judgment was subsequently affirmed by the Circuit Court of Appeals at New Orleans. Pending this suit the indebtedness due to the bank was paid; and in order to indemnify the bank and the Harrisons against loss by reason of any judgment that might be rendered in the case, the Whites placed in the bank and with the Harrisons about the sum of $2765, to be by them held until the termination of said suit, it being supposed by all the parties that this amount would be ample to cover any possible judgment ultimately rendered in the case. About this time G. E. and R. I. White organized the appellant, Southern Trading Company. While this suit was yet pending and during the progress of the receivership instituted at the instance of Thomas, receivers' certificates were issued to the extent of about $22,500. The property of the Standard Light and Power Company was ordered sold by the court, and the Southern Trading Company, desiring to purchase the same, made application to the appellee, and obtained from it a loan of about $21,261.25, with which to make payment for the property. In the meantime the sum of money deposited with the bank as an indemnity had been taken down by mutual consent, and the $22,500 in receivers' certificates, which had passed into the hands of the Southern Trading Company, had been substituted therefor. The bank made the loan and paid the $21,261.25 to the receiver on the Southern Trading Company's bid, and accepted a note signed by the Southern Trading Company and indorsed by G. E. and R. I. White, due six months after date, bearing 8 per cent per annum interest, and providing for the payment of 10 per cent attorney fees if the same should not be paid at maturity. This note was secured by a chattel mortgage upon the property sold; the agreement also provided, in effect, that whatever amount should fall to the receivers' certificates from the Thomas judgment should be applied to the satisfaction of that judgment, and in the event there was yet a balance due that the bank should pay two-fifths and the Southern Trading Company the remaining three-fifths of the same. When the Thomas judgment was finally affirmed for the amount mentioned, it became an asset of the Standard Light and Power Company, and the distributive portion allotted to the receivers' certificates, amounting to $5171, was by the direction of R. I. White, president of the Southern Trading Company, and in pursuance of the previous agreement referred to, applied by appellee to that judgment. The $21,265.25 note was not paid at maturity, and was placed in the hands of attorneys for collection. The Southern Trading Company had at this time conveyed all the property to intervener, Citizens Light and Power Company of Fort Worth, a new corporation organized by the Whites, but which in no way assumed the payment of the note to appellee. The bank had caused the trustee to advertise the property for sale, and in consideration of its agreement to forbear pressing the collection, and to postpone the trustee's sale of the property for a definite time, the Citizens Light and Power Company and the Whites agreed to hold the Harrisons and the

bank harmless from said judgment, and to pay the same. The first moneys realized on the receivers' certificates, which amounted to $5683.24, was applied as a credit on the $21,261.25 note. Subsequently, and after the postponement of the trustee's sale, from the proceeds of a sale of its bonds, the Citizens Light and Power Company paid the balance of the $21,265.25 note, including $1244 interest, which did not exceed the 8 per cent stipulated; and paid the further sum of $4500 to the bank as indemnity against loss on the Thomas judgment. The Whites owned practically all the stock of the Standard Light and Power Company, the Southern Trading Company and the Citizens Light and Power Company, and these corporations were but other names for G. E. and R. I. White, who were at all times insolvent, and who conducted their business mostly through these media. The Citizens Light and Power Company assigned to the Southern Trading Company whatever rights it had against appellee to recover a penalty for the payment of usury. Appellee would not have loaned the money except for the prospect of thus securing itself against the payment of the Thomas judgment, but had no intention of adopting this plan as a device or scheme for securing usury from appellants, further than the facts mentioned would necessarily have that effect, if they did so. The Whites recognized that they were morally and legally obligated to discharge this judgment in toto, and that it would be inequitable for the bank or the Harrisons to pay any part of the same. As will be readily seen, the payment of the items of $5171, proceeds of the receivers' certificates, and $4500 derived from the sale of the Citizens Light and Power Company's bonds, together with the $1244 interest, constituted the usurious interest alleged to have been paid by appellant and forms the basis for the recovery of the penalty in this case.

We think the undisputed facts fail to show a case which would entitle appellants to recover. Clearly as to the Citizens Light and Power Company there could be no recovery, for the simple reason there never was any contract between it and the bank for the loan, and the company never at any time assumed or promised to pay the debt in any manner whatever; its agreement was to indemnify the bank against the payment of the Thomas judgment; it then thought the postponement of the trustee's sale of its property a sufficient consideration for its promise, and as we see the case, never having promised or paid usury, had no right to recover a penalty which it could assign to appellant or anyone else.

Nor is the Southern Trading Company in any better position. While it borrowed the money and contracted to pay in addition to the 8 per cent interest three-fifths of the amount of the Thomas claim remaining unpaid after the application of the proceeds of the receivers' certificates then hypothecated with the bank, still the evidence shows that it not only has not paid usury, but has not repaid the principal of the loan. The Citizens Light and Power Company paid the greater portion of this debt out of the proceeds of a sale of its bonds, and in like manner it paid

the $4500 on the Thomas judgment, as has already been shown. We fail to find any evidence whatever that the Southern Trading Company owned these bonds, or any interest in the proceeds arising from their sale. Even, therefore, if the Southern Trading Company undertook to pay an unlawful interest for the loan made by the bank to it, which we do not mean to indicate is the case, it has nevertheless not done so, and therefore has no support in its claim for the penalty in this case. The Whites can not recover because, if for no other reason, they have not sought a recovery. So much for the status of the respective parties, if we treat them all as having a separate and distinct identity, as appellants treat them. On the other hand, if we view the transaction, as we think we ought, in the light of a contract upon the part of the Whites to borrow $21,261.25 from the bank, and in addition to paying 8 per cent per annum interest thereon, to hold the lending bank harmless from the payment of the Thomas claim, we still think the transaction free from usury. It is not always an easy task to say when a contemporaneous agreement imposing upon a borrower a burden in addition to the payment of the highest legal rate of interest will taint the transaction with usury.

Mr. Tyler, in his treatise upon Usury, at page 141, upon the authority of an early New York case, says that "the fact that upon a loan of money the lender exacts as a condition of his making the loan that the borrower should secure to him the payment of a subsisting and genuine debt due him from a third person does not, per se, render the loan usurious."

In Bishop v. Bank, 41 S. E. Rep., 43, a much later case than the New York case, the contrary doctrine seems to have been held; it is there said in effect that where a lender requires, in addition to the full legal rate of interest, as a condition precedent to making the loan, that the borrower shall assume and pay off a promissory note held by the lender against another who is known to be insolvent, and which note the borrower was under no legal or moral obligation to pay, it constituted an usurious transaction. It is very generally held that where, in addition to demanding the highest rate of interest for a loan, the borrower is required to purchase from the lender something at an exorbitant price, or something which the borrower does not need or want, the transaction becomes thereby marked as a cover for usury; and the general rule seems to be as stated in Campion v. Kille, 14 N. J. Eq., 232, as follows: "In the construction of the statute against usury, the courts have held with undeviating uniformity that where the real transaction was a loan of money, no shift could evade the statute. No matter under what guise the loan was concealed,—whether by sale of goods, transfer of stock, taking bond for larger amount than loaned, passing off depreciated paper, or by any other expedient,—the court will strip off the guise, and ascertain the true nature of the transaction." Mr. Tyler also says, upon the authority of 36 Barb., 649, at page 143, "that an agreement

by a borrower to pay a subsisting debt of his own in consideration of a new credit is not usurious, if the purpose is to pay only the amount actually due on the old debt, and the amount of the loan with lawful interest."

So, as to the Whites, the most that can be said is that, in addition to paying 8 per cent interest on the money borrowed by them, they undertook and agreed also to pay the Thomas judgment; but it will be observed that this claim or judgment constituted a just and legal demand against the Whites, and one for the payment of which they were as much bound as the appellee; they were not required by the bank to do more than to pay a just debt for which they were already fully liable. It would be, we think, a shocking proposition to assert that the Whites, by reason of having paid 8 per cent interest, as such, for this loan, and also having discharged their own debt, could recover a penalty against the bank as for usury paid it. The nature of the judgment is such that the party paying it can not seek contribution from the other judgment debtors, but this can not change the result. Appellee is in no better or worse position, with respect to the Thomas judgment than if the Whites had voluntarily paid the same. We fail to see how, in any view of the case, this payment by them can be regarded as a payment to the bank of usury. The fact that the bank stipulated for 8 per cent interest only, when it might have taken more, and all the other circumstances in the case indicate that the plan here adopted was not intended as a guise for usury, but was a bona fide transaction, satisfactory alike to all the parties, whereby the Whites would be enabled to purchase property which they very much desired, and at the same time to pay a judgment which they recognized that they, rather than the bank, were morally liable for. We think the trial court did not err in summarily directing a verdict for the defendant, and its judgment is affirmed.

*Affirmed.*

Writ of error refused.