ARMSTRONG et al. v. CITY NAT. BANK OF
GALVESTON.   (No. 9268.)

Court of Civil Appeals of Texas.   Galveston.
April 2, 1929.

Rehearing Denied May 9, 1929.

Geo. W. Armstrong, of Fort Worth, for appellants.

H. E. Kleinecke, Jr., and McDonald & Wayman, all of Galveston, for appellee.

Smith & Rowland, of Fort Worth, amicus curiæ.

PLEASANTS, C. J.  This suit was brought by appellee against appellants to recover the sum of $5,000 with interest and attorney's fee due upon a note for $5,000 executed by appellant Armstrong as principal, and indorsed, and its payment guaranteed, by appellant Kirby.

The defendant Armstrong answered by general demurrer and general denial, and specially pleaded that the note sued on was given in renewal of the balance due upon a note for $15,000, which was executed by defendants in consideration of a loan by appellee to defendant Kirby of $15,000 for the benefit of defendant Armstrong, and for which defendant Kirby had executed his note to appellee, which has been paid in full, and that therefore the note sued on is usurious and void.  He further sought by plea in reconvention to recover penalties from appellee for usury in the sum of $21,150.

The defendant Kirby answered by general demurrer and general denial and plea of failure of consideration, which was duly verified.

By supplemental petition, appellee excepted generally and specially, and denied all of the averments of defendants' answers, and specially pleaded as follows:

"And for further answer, if required, plaintiff avers that on, to wit, April 25, 1922, it was, in consideration of moneys loaned and other valuable considerations, the holder and owner of a promissory note of that date for the principal sum of $15,943.40 payable to the order of plaintiff nine months after date with interest at 8% per annum from date until paid, providing for 10% additional as attorney's fees, and executed by George W. Armstrong & Co., a corporation 'of Fort Worth, Texas, and by defendant George W. Armstrong;  that after maturity the note was placed in the hands of attorneys for collection and the attorney's fees therein provided for became due.

"That plaintiff continued to hold and own said note, no part of the principal, interest or attorney's fees due thereon having been paid, until September, 1923, when plaintiff was importuned and solicited by defendants herein to accept in lieu of, and as a renewal

of, said indebtedness a note for $15,000.00 to be signed by defendant Armstrong and endorsed by defendant Kirby, and said defendants Armstrong and Kirby at the same time solicited and importuned plaintiff to make an additional loan of $15,000.00 to defendant Kirby. Plaintiff avers that at the earnest solicitation of defendant it did, on or about September 25, 1923, accept from defendants, in lieu of the indebtedness evidenced by the $15,943.40 note mentioned above, a note signed by defendant Armstrong and endorsed by defendant Kirby for $15,000.00, due three years after date without interest until maturity; that said note was given to and accepted by plaintiff in settlement and as a renewal of the said indebtedness due plaintiff by George W. Armstrong & Co. and George W. Armstrong. In this connection plaintiff avers that it, at the same time, accepted and discounted defendant Kirby's note for the principal sum of $15,000.00 due six months after date, paying to the defendants at the time the principal amount of said note less discount at 7%.

"Plaintiff avers that the note herein sued on was given in extension and renewal of the balance due on the above mentioned $15,-000.00 note so signed by defendant Armstrong and endorsed by defendant Kirby.

"This plaintiff specially denies that the note sued on, or any part of the $15,000.00 note signed by defendant Armstrong and endorsed by defendant Kirby was given as a premium or as a consideration of the said loan to Kirby, but was executed and delivered to plaintiff by defendants in settlement and as a renewal and extension of the indebtedness theretofore owing to plaintiff by George W. Armstrong & Co. and defendant George W. Armstrong. Plaintiff avers that it is informed and believes, and therefore alleges, that the $15,000.00 that was loaned defendant Kirby was for the joint use and benefit of defendants and that the said Kirby endorsed defendant Armstrong's $15,000.00 note and the renewals thereof for valuable considerations moving between defendants.

"Plaintiff specially denies that it had knowledge or any reasonable cause to believe that it could or would be claimed that the $15,000.00 renewal note executed by Armstrong and endorsed by Kirby was a premium or usurious charge for making the $15,-000.00 loan to Kirby; that this plaintiff verily believed that the said Kirby endorsed the note of defendant Armstrong for good and valuable consideration moving between them. In this connection this plaintiff avers that it was induced to make said loan to Kirby because of the earnest solicitation and request made principally by defendant Armstrong."

The trial in the court below without a jury resulted in a judgment in favor of plaintiff against both defendants for the amount due upon the $5,000 note, with interest and attorney's fee, and against defendant Armstrong on his suit for penalties.

There is no material conflict in the testimony, and the following fact findings by the trial court are fully supported by the evidence:

"1. On and prior to January 20, 1923, George W. Armstrong & Co., a Texas corporation, and defendant George W. Armstrong were jointly and severally indebted to plaintiff, City National Bank of Galveston, on a promissory note for the principal sum of $15,943.40 with 8% interest thereon from April 25, 1922, and 10% attorney's fees.

"2. On, to wit, January 20, 1923, George W. Armstrong filed a voluntary petition in bankruptcy, was adjudged a bankrupt, and in due course was granted a discharge, with the result that his liability on the above mentioned note was barred by his discharge.

"3. At the time Mr. Armstrong was adjudged bankrupt, he owned all, or practically all, of the stock of George W. Armstrong & Co. (a corporation), a ranch in Mississippi with cattle thereon, known as Sligo Ranch, and certain property adjacent to Fort Worth, Texas. George W. Armstrong & Co., Inc., owned a steel mill appraised at, and had a value of, some $830,000.00. The corporation was insolvent and lien creditors were threatening to foreclose on the mill. The Sligo Ranch, with the live stock thereon, had a value of some $400,000.00 over and above a first mortgage thereon for $125,000.00. The value of the property adjacent to Fort Worth or the amount of liens thereon is not shown by the evidence.

"4. About the time Mr. Armstrong went into bankruptcy he and defendant John H. Kirby, his close personal friend and a man of large means, formed a plan whereby Mr. Kirby would, at the threatened foreclosure, purchase the steel mill owned by the corporation and would purchase the Sligo Ranch and cattle from the Trustee in Bankruptcy when they were sold. It was contemplated that Mr. Kirby would advance the money to pay for the properties and transfer them to Mr. Armstrong subject to the amounts he might be required to advance. It was Mr. Armstrong's declared purpose on account of his moral obligations, if the plan was carried out and he reacquired the properties, to revive the debts of those who would make loans to him or Mr. Kirby for the purpose of purchasing and financing the properties even though such debts were barred by his discharge in bankruptcy. Mr. Armstrong, before and after going into bankruptcy, discussed the proposed plan with Mr. Kirby and with a committee representing a number of his larger creditors and also discussed it with representatives of plaintiff.

"5. Some time prior to July 30, 1923, Mr. Kirby purchased the mill and incorporated

it as Texas Steel Company. The corporation then issued stocks and bonds. He also enabled Mr. Armstrong to acquire the Sligo Ranch and cattle; and under date of July 30, 1923, Mr. Armstrong requested plaintiff, along with a number of others, to loan to Mr. Kirby approximately $150,000.00, proposing if they would do so he would revive their respective debts by executing notes payable two years after date without interest for amounts equal to their participation in the loan to Mr. Kirby. The proposed loan to Mr. Kirby and the notes to be executed by Mr. Armstrong were to be secured by a lien on the Sligo Ranch and cattle and the stocks and bonds then representing the Mill, Mr. Kirby to have priority for the liabilities he incurred. Details of the plan are set out in Exhibit 20. Four days later the proposal was modified in a letter dated August 4th, in which Mr. Armstrong stated that he had concluded to ask Mr. Kirby to endorse his renewal notes with the understanding that he was to have three years without interest, instead of two, and that those who did not receive Mr. Kirby's endorsement should have the preference right to be paid in full. The proposal was further explained in Mr. Armstrong's letter under date of August 17, 1923, to McDonald & Wayman, attorneys for plaintiff bank, enclosing a copy of a letter from Mr. Armstrong to Flanary, and in a letter from Armstrong to McDonald & Wayman under date of September 14, 1923, enclosing a copy of a letter from Mr. Armstrong to George A. Carden.

"6. A number of banks and individuals made loans to Mr. Kirby in accordance with the proposed plan.

"7. Plaintiff City National Bank, acting through its attorneys, by letter dated September 19, 1923, agreed to loan Mr. Kirby $15,000.00 in keeping with the plan outlined, and the following letter from plaintiff bank addressed to Mr. Armstrong and Mr. Kirby, under date of September 25, 1923, shows the consummation of the agreement and the terms on which the loan was made:

"'September 25th, 1923.

"'Mr. John H. Kirby, Great Southern Bldg., Houston, Texas. Mr. Geo. W. Armstrong C/o Mr. John H. Kirby, Houston, Texas—Gentlemen: We acknowledge receipt of Mr. Armstrong's letter date September 22nd, addressed to Messrs. McDonald & Wayman, enclosing Mr. Kirby's 6-month note for $15,000.00 and Mr. Armstrong's note endorsed by Mr. Kirby for a like amount, due three years after date with interest from maturity. Each note bears date August 8th. We have discounted Mr. Kirby's note at 7% as of today, affixed and cancelled revenue stamps to both notes, and as requested hand you our cashier's check for $14,606.08. The note signed by Mr. Armstrong endorsed by Mr. Kirby we are taking as a renewal for the debt due us by Geo. W. Armstrong Company and Geo. W. Armstrong, on which he has been discharged in bankruptcy.

"'We agree upon the payment of interest each six months after date at 7%, to make three 6-month renewals of the note signed by Mr. Kirby, so that it will finally become due August 7th, 1925. Each renewal will carry with it the privilege of payment on or before maturity.

"'This letter in duplicate may be taken as our contract to carry out this undertaking. Yours very truly, [Signed] A. A. Horne, Vice President.'

"8. The acceptance of these notes by plaintiff released George W. Armstrong & Co.

"9. Plaintiff and others making loans had and were entitled to an equitable lien on Sligo Ranch and cattle and the stocks and bonds of the mill to secure the payment of their notes, such lien, though, being subject and inferior to obligations due Mr. Kirby. The value of these securities was largely in excess of the obligations incurred by Mr. Kirby.

"10. The $15,000.00 note signed by Mr. Kirby was paid in due course. There was paid on the note signed by Mr. Armstrong and endorsed by Mr. Kirby on August 11, 1926, $5,000.00 and interest at 7%, amounting to $350.00; and a renewal note for $10,000.00 was taken, due February 8, 1927, and discounted on the basis of 7% per annum, the interest amounting to $350.00. On February 7, 1928, $5,000.00 of the principal was paid and a renewal note for $5,000.00, due in six months, was discounted on the basis of 7%, the interest amounting to $175.00. The last mentioned note is the one involved in this suit. Each of these renewal notes was signed by Mr. Armstrong and guaranteed and endorsed by Mr. Kirby.

"11. On January 6, 1928, Mr. Kirby assigned to Mr. Armstrong his cause of action against plaintiff for penalties for usury.

"12. Mr. Armstrong and Mr. Kirby originated the plan and proposed the loan, and it was made by plaintiff bank on the basis they proposed and at their requests.

"13. Plaintiff, bank did not receive the $15,000.00 note signed by Mr. Armstrong and endorsed by Mr. Kirby as a premium or as interest or as a charge for making the $15,000.00 loan to Mr. Kirby. None of the parties thought at the time or intended it as a shift or device to avoid the usury statute, but each acting in good faith thought the note was a renewal of the debt then due the bank by George W. Armstrong & Co. and Mr. Armstrong."

We have duly considered each and all of the various propositions presented in the able brief of appellant, but, in the view we take of the controlling question in the case, we only deem it necessary to discuss the one question of whether the note for $15,000, in renewal of a portion of which was executed

the $5,000 note upon which the suit was brought, was the giving by appellants and the receiving by appellee of usurious interest charged appellant and Kirby for the $15,000 loan made to Kirby for appellant's benefit, and was therefore unlawful, regardless of the intention of the parties in the transaction.

■ The larger number of the propositions presented in the brief complain of the admission of evidence and the fact findings of the court based thereon, showing the original plan and purpose of appellants in the acquisition by Kirby of the properties of the bankrupt estate. These complaints are based mainly upon the' contention that the $15,000 loan to Kirby, and the $15,000 note executed by appellant Armstrong and indorsed by Kirby, were not made and executed in pursuance of the original plan under which Kirby purchased the property, but were based wholly upon the agreement between the parties at the time the loan to Kirby was made. The evidence does not sustain this contention.

The correspondence between the parties, which began in January, 1923, and consisted of numerous letters passing between the attorneys for appellee and the appellant Armstrong, which are set out in full in the statement of facts, show that the original plan and purpose of appellant Armstrong in soliciting and obtaining the $15,000 loan to Kirby for carrying on the steel mill enterprise was partly, if not primarily, to enable Armstrong, out of the profits of this business, to repay all of the creditors from whom he had been released of any legal obligation by his discharge in bankruptcy, and the testimony of Armstrong shows that this was the purpose and intention of himself and Kirby in the purchase of the properties by the latter. In the last letter written by appellant Armstrong soliciting the loan to Kirby, and proposing, if the loan was made, to give appellee a note for a like amount indorsed by Kirby in discharge of his indebtedness to appellee from which he had been discharged by the bankruptcy court, he incloses a letter written by him to another of his former creditors explaining his purpose and plan in soliciting loans for Mr. Kirby, as follows:

"1. That I am unwilling to change the proposition made to certain of my creditors for the reason that more than two-thirds of them in amount have already accepted the proposition and made the loans in accordance therewith. I cannot in fairness to them show preference to the creditors who have not yet accepted, nor am I willing to undertake to change a plan that has already been discussed and agreed upon between Mr. Kirby and myself.

"2. My proposition calls for my giving notes for the same amount as my creditors lend Mr. Kirby, which will be endorsed by him. For example, if you and Mr. Schall lend Mr. Kirby $10,000.00, then I will give a note for that amount which Mr. Kirby will endorse. You have the privilege, if you wish, of making the loan '$5,000.00 each, or any amount that you care to make it up to $15,-000.00 each. Whatever the amount of the loan, I will give a note for like amount, which will be endorsed by Mr. Kirby. I recognize in this financing the balance of their debts in preference to any other creditors, but I do not propose at this time to involve Mr. Kirby or myself beyond what I think I can reasonably pay within the time stated.

"3. I am not seeking this loan as a personal favor from my friends. On the other hand I am offering it to those creditors who are my friends that I desire to pay. I have not offered it to any creditor who has been unfriendly, nor to any creditor where I am liable as surety. I have offered it only to those creditors that I desire to pay, notwithstanding my discharge in bankruptcy. I shall pay them and Mr. Kirby and all other indebtedness before I shall consider paying anyone else.

"I desire to pay you and Mr. Schaff, otherwise I would not have made you the proposition,' and if you do not accept it as made, then I shall subordinate your debts to those who do accept it. There is a moral obligation upon the part of a discharged bankrupt to pay the debts from which he has been discharged. But there is a stronger obligation on his, part to pay those who are instrumental in re-establishing him. There is some obligation, too, on the part of the creditors to assist the bankrupt·who desires to pay, provided the assistance can be rendered in a reasonably safe way.

"I cannot regard as a personal favor a loan which is to your advantage rather than mine. Mr. Kirby is able and willing to do this financing without the help of any of my creditors. I was unwilling to impose this additional burden upon him for the reason that I thought the creditors that I intended to pay should help, and I therefore submitted this proposition to them."

Upon receipt of this letter, appellee agreed to make the loan to Kirby, and the two notes were executed as set out in the court's findings of fact.

■ It may be that the evidence and the findings of fact as to the original plan and purpose of appellants are unnecessarily cumulative and comprehensive, and to that extent immaterial, but this would not authorize a reversal of the judgment.

These findings of fact conclusively show that neither party to the transaction intended, by the execution of the note in renewal of the indebtedness from which appellant Armstrong had been discharged in the bankrupt proceedings, and the making of the loan to Kirby for Armstrong's benefit, to violate the usury statute, nor did either of them suspect that there was any question of the right of

appellee to receive the renewal note given in consideration of the moral obligation of the maker to pay a just debt without thereby making the loan to Kirby usurious.

All of the evidence negatives the idea of any corrupt motive or agreement which could be termed a device or shift to cover usury. It is too well settled to require citation of authority that a note given for a barred debt, whether the bar be interposed by a limitation statute or by a discharge in bankruptcy, is supported by a sufficient consideration, and we cannot agree with the proposition that, notwithstanding a sufficient lawful consideration for this note is shown, independent of the loan to Kirby, the making of the two notes at the same time rendered the transaction usurious as a matter of law, regardless of the innocent intention of the parties.

The statute (U. S. Code, title 12, § 86) under which appellants' claim of usury is made, defines usury as "taking, receiving, reserving, or charging" a greater rate of interest than is allowed by law, when "knowingly done." By the express terms of the statute, the "taking, receiving, reserving or charging" of a greater rate of interest than that allowed by law must be "knowingly done" to constitute usury.

Unless the contract charged to be usurious shows upon its face that a greater rate of interest than is allowed by law is being charged for the use of money loaned, the intention of the parties to the contract becomes controlling. The statute is quasi criminal in character, and the rule of construction applicable to criminal statutes must be looked to in its interpretation. The general rule applicable here is thus stated by the Supreme Court of the United States: "Where, indeed, the contract, upon its very face, imports usury, as by an express reservation of more than legal interest, there is no room for presumption, for the intent is apparent; res ipsa loquitur. But where the contract on its face is for legal interest only, there it must be proved, that there was some corrupt agreement, or device or shift, to cover usury; and that it was in the full contemplation of the parties." Bank of U. S. v. Waggener, 9 Pet. 378, 9 L. E. 163.

The rule is stated this way in 27 R. C. L. 221: "When, indeed, the contract on its face imports usury, as by an express reservation of more than legal interest, there is no room for presumption for the intent is apparent. However, intent, when the contract is not usurious on its face, must be gathered from the circumstances of the case. If the transaction was by the borrower supposed and intended to be usurious, but was by the lender intended and supposed not to be so, as he is the party who would suffer any penalty that might be imposed, the transaction must be regarded as innocent. On the other hand, the innocence of the borrower cannot shield a lender who is himself aware of the usurious nature of the transaction."

This rule is approved and followed in the following cases: Cockle v. Flack, 93 U. S. 344, 33 L. Ed. 949; Huddleston v. Kempner, 1 Tex. Civ. App. 211, 21 S. W. 946; Southern Trading Co. v. State National Bank, 35 Tex. Civ. App. 5, 79 S. W. 644. The case last cited was a suit to recover penalties for usury based upon these facts: G. E. and R. I. White owned practically all of the stock of Standard Light & Power Company, Southern Trading Company and Citizens' Light & Power Company, and conducted most of their business through these media. One Thomas had obtained a judgment for some $9,000 against the Whites and the State National Bank. The Whites recognized that they were morally and legally obligated to themselves discharge this judgment, and that it would be inequitable for the bank to have to pay it; but they were not financially able to pay the judgment, and the bank, being the only responsible party, was certain to have the judgment to pay, and, it being founded upon tort, no right of contribution existed in favor of the bank against the Whites. The bank, wishing to get from under this judgment, loaned the Southern Trading Company a large sum of money secured by deed of trust on property which subsequently passed into the hands of Citizens' Light & Power Company. This loan becoming due, and the bank having threatened foreclosure, the Citizens' Light & Power Company applied for an extension, and, upon the agreement that the last-named company and the Whites would protect the bank against the payment of the Thomas judgment, the bank granted a renewal. The note provided for 8 per cent. interest, and it was the contention of the plaintiff in the suit that the transaction was rendered usurious by the requirement that the Citizens' Light & Power Company should pay the Thomas judgment in addition to the interest provided for in the note. It is perfectly clear that the inducement to the Citizens' Light & Power Company to take over the payment of the Thomas judgment in addition to interest was to get the extension of time for payment of the note. Upon these facts the Court of Civil Appeals for the Second District, in an able opinion by Justice Speer, held: "If we view the transaction—as we think we ought—in the light of a contract upon the part of the Whites to borrow $21,261.25 from the bank, and, in addition to paying eight per centum per annum interest thereon, to hold the lending bank harmless from the payment of the Thomas claim, we still think the transaction free from usury. * * * The most that can be said is that, in addition to paying eight per cent. interest on the money borrowed by them, they undertook and agreed also to pay the Thomas judgment; but it will be observed that this claim or judgment constituted a just and legal demand against the

Whites, and one for the payment of which they were as much bound as the appellee. They were not required by the bank to do more than to pay a just debt, for which they were already fully liable. It would be, we think, a shocking proposition to assert that the Whites, by reason of having paid eight per cent. interest, as such, for this loan, and also having discharged their own debt, could recover a penalty against the bank as for usury paid it."

Our Supreme Court refused a writ of error in. this case. We do not think that the fact that the Whites were both legally and morally bound to pay the Thomas judgment affects the question. The agreement in that case was no more valid and binding, nor supported by a more valid consideration, than the agreement of the appellant Armstrong to pay his debt to appellee.

█ There is no merit in the plea of want of consideration on the part of appellant Kirby. The note having been executed by the principal, Armstrong, for a sufficient consideration, no additional consideration was necessary to support Kirby's contract of suretyship. Bonner Oil Co. v. Gaines, 108 Tex. 232, 191 S. W. 552, Ann. Cas. 1918C, 574.

In addition to this general rule as to the consideration necessary to support a contract of suretyship, our Negotiable Instruments Law settles this question. Section 29 of this act (Rev. St. 1925, art. 5933) is as follows: "An accommodation party is one who has signed the instrument as maker, drawer, acceptor, or indorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party."

We are of opinion that the judgment should be affirmed, and it has been so ordered.

Affirmed.

### On Motion for Rehearing.

Appellants have presented a very forceful motion for rehearing in which they vigorously assail the conclusions expressed in our main opinion. The writer of that opinion must have been unusually inept and obscure in the language used to express the conclusions of the court if the criticisms of the opinion contained in the motion are justified. No denial will be made of the fact upon which one of these criticisms is based. The opinion does largely follow the argument and conclusions presented in appellee's brief, and we respectfully decline to offer any excuse or apology for so doing. We will add, however, in all sincerity, that, if the court had reached a contrary conclusion upon the controlling question in the case, the writer of the opinion would have with equal satisfaction largely adopted the very able argument of the author of appellants' brief and of the motion for rehearing.

This court did not and does not hold that Kirby holds the property of the bankrupt estate acquired by him in trust for the former creditors of the estate for like amounts as the advances made by them to enable Kirby to operate the property. Our conclusion that the note sued on is not usurious is the sole basis for our affirmance of the judgment.

It seems to us that to predicate usury upon the facts of this case would be to place too literal a construction upon the language of the statute, and to thereby subvert its protective purposes into means of oppression and obstruction of the honest effort of unfortunate debtors to meet their just obligations.

It cannot be contended that the two $15,000 notes were not valid, lawful obligations on their face, and, if they had not been executed as a part of the same transaction, no question of usury would have been raised.

We are unwilling to hold that, because these notes were executed at the same time, and the execution of one was a consideration for the other, the transaction thereby becomes usurious. Each of the notes being supported by sufficient valid consideration, it is hard to see how one could destroy the other, and we cannot so hold.

We adhere to the conclusions expressed in our original opinion, and the motion for rehearing is overruled.

Overruled.