### ORR v. McDANIEL et ux. (No. 2995.)

Court of Civil Appeals of Texas. Amarillo. April 11, 1928.

1. **Usury** ☞119—Whether mechanic's lien contract was invalid for usury held question for jury under conflicting evidence.

In action wherein plaintiffs alleged invalidity of mechanic's lien contract on ground of usury, conflicting evidence *held* to present question of fact for jury, and giving peremptory instruction for plaintiffs was error.

2. **Usury** ☞119—Whether transaction was evasion of usury law is question for jury, where contract is not usurious on its face.

Where mechanic's lien contract, alleged to be invalid for usury, did not show usury on its face, question of whether or not transaction was intended as an evasion of the law for usury is one for the jury.

Appeal from District Court, Lubbock County; Clark M. Mullican, Judge.

Action by L. A. McDaniel and wife against G. H. Orr. Judgment for plaintiffs, and defendant appeals. Reversed and remanded for new trial.

Bean & Klett, of Lubbock, for appellant.
Bledsoe & Crenshaw, of Lubbock, for appellees.

RANDOLPH, J. Appellees, L. A. McDaniel and wife, who were plaintiffs below, sued and obtained judgment against appellant, G. H. Orr, for $612, on the alleged ground that appellant received from appellees $250 in excess of the legal rate of interest, and this appeal involves the questions arising on that trial.

The first error assigned is that the trial court erred in giving a peremptory instruction to the jury to return a verdict for the plaintiffs in that court.

The plaintiffs, in their petition, allege that, on or about August 4, 1925, plaintiffs, as owners of certain real estate in the town of Slaton, made and entered into a mechanic's lien contract for $2,500 with defendant, a contractor, whereby the defendant obligated himself to build for plaintiffs a dwelling upon said premises for said sum of money, and that thereafter, to wit, on or about October 4, 1925, another written contract was made between said parties whereby plaintiff, L. A. McDaniel, undertook the erection of the dwelling by himself, the defendant, Orr, to furnish the money to the extent of $2,000, to pay for the labor and material so furnished by plaintiffs.

It is further alleged that the plaintiffs started work on their house on or about October 4, 1925, and finished the same in January or March of the following year; that plaintiffs paid defendant $56 for the use of the money, at the legal rate, and also a bonus of $250, making a total of $306, for the use of the $2,000, for a period of five months or thereabout.

One substantial change or difference between the contract of August 4th and the subsequent contract of October 4th is that in the former contract the defendant, Orr, as contractor, obligated himself to furnish the labor and material, while in the latter con-

tract the plaintiff, McDaniel, as owner, was given the privilege of furnishing his own labor and material; defendant, Orr, being required to furnish the money to the extent of $2,000 to pay for said labor and material, and to perform said services in connection therewith. It was further pleaded that it was understood and agreed by the parties that the plaintiffs would only need the money for a short period of time, not to exceed four to six months, and that, in confirmation of such understanding and agreement, it was further mutually agreed and understood between the parties that a loan in the sum of $2,500 had been approved upon said property by the Standard Savings & Loan Association of Detroit, Mich., and that the money from said loan would shortly be available, and it was understood and agreed between plaintiffs and defendant that, when said money was received, upon the payment by these plaintiffs to the defendant of said principal sum of $2,000, together with $250 interest upon the same, the defendant would release these plaintiffs from further liability to him upon his contract with them; that, in pursuance to said understanding and agreement, and to secure the defendant in the repayment to him of said money, the plaintiffs were required by the defendant to make and execute to him a purported mechanic's lien contract upon the premises in the sum of $2,500, and to give to him a deed of trust lien upon certain other property, to secure $200 of said $2,000 loan; that it was contemplated by the parties that these plaintiffs would be able to repay said sum of $2,000 within the period of four to six months, and, under said expectation, the notes executed and delivered by plaintiffs to defendant were dated August 4, 1925, and were due, according to their terms, on December 4, 1925; that, although the said amount of money so advanced to the plaintiffs by the defendant was only the sum of $2,000, the defendant required these plaintiffs to execute and deliver to him notes in the sum of $2,800, being one note for the sum of $2,500, dated August 4, 1925, and due 120 days after date, and one note for $300, dated August 4, 1925, and due December 4, 1925; that the plaintiffs were not, at said time, indebted to the defendant in said sum of $2,800, nor did they receive from the defendant, in consideration of the execution and delivery of said notes, the sum of $2,800, but only received the sum of $2,000, said last-mentioned amount being all the money that the defendant ever agreed to or did advance to these plaintiffs, but that the defendant, for the fraudulent and illegal purpose, and concealing and disguising the real nature of the transaction, so as to cover up and hide the fact that he was exacting of these plaintiffs usurious interest upon said $2,000 advancement, caused the said notes to be drawn and prepared in said amounts; that in truth and in fact no part of the said sum of $2,000 was paid or advanced to these plaintiffs or to any other person for or on their account at the time of the execution and delivery of said notes, but that parts of said sum were advanced to these plaintiffs, or paid to other persons for their account, during a period beginning about the 15th day of October, 1925, and ending about the 1st day of February, 1926; that during the time from the 4th day of August, 1925, when the said mechanic's lien contracts were executed, up to the 15th day of October, 1925, the said defendant retained all of said money in his possession and control, and never paid any part of it to these plaintiffs until the last-mentioned date.

Further pleading, the plaintiffs say that thereafter, on, to wit, the 6th day of March, 1926, these plaintiffs paid to the defendant, and the defendant received of and collected from these plaintiffs, the sum of $2,306, being the $2,000 principal of said loan, and $306 received of and collected from these plaintiffs by the defendant, as interest on said loan of $2,000; that these plantiffs only had the use of the money so loaned to them by the defendant for approximately five months from the date same was received by them to the date same was repaid by them to the defendant, and that the amount charged and received of and collected from the plaintiffs by the defendant, as interest, was largely in excess of the rate allowed by law, being approximately at the rate of 25 per cent. per annum, and was illegal and usurious.

The defendant filed his answer setting up exceptions and general denial, and specially pleaded that the defendant did not require the plaintiffs to execute a "purported" mechanic's lien contract to secure the payment of the money advanced by the defendant, but that the plaintiffs, with a fraudulent intent of securing the sum of $2,500 as a loan from the Standard Savings & Loan Association, by means of placing a fraudulent lien on the homestead, made, executed, and delivered the aforesaid mechanic's lien contract in that sum to this defendant, in order to obtain said loan and said amount, the plaintiffs well knowing that the improvements to be made on said homestead would not amount to said sum of $2,500, and well knowing that the only lien they could place on their homestead would be by means of a mechanic's or materialman's lien for improvements thereon, and that same would be only for the amount of said improvements, and the plaintiffs were willing and offered to pay the said defendant one-half of said excess of said loan above the amount for which they could legitimately execute a mechanic's lien thereon, and did pay him said sum, not as interest on the money borrowed from him, but as pay for the use of his name in securing said loan for the sum of $2,500, and for his services in connection therewith, and that said plaintiffs

are therefore estopped by their own wrongdoing from attacking the validity of said mechanic's lien contract or any of the terms thereof.

And the defendant further answers that the additional sum of $250 above the amount of money loaned by the defendant to said plaintiffs was not received by this defendant as interest on said money, nor for the use of said money, but that same was paid by plaintiffs to the defendant, and by him received as compensation for his services rendered to plaintiffs, as set out in the contract made a part of the plaintiffs' petition, to wit, "to pay for material as it arrives and pay labor each Saturday evening," all of which said services this defendant rendered to said plaintiffs as required by said contract to do, and also as alleged, as compensation for the use of this defendant's name, in securing the additional sum of $500 above the estimated amount of improvement, from the Standard Savings & Loan Association, by virtue of said mechanic's lien contract, aforementioned, and other pleas not here necessary to set out.

[1] Appellant, defendant below, charges error in the giving to the jury of a peremptory instruction to find in favor of the plaintiffs, in that there is no undisputed evidence of usury, on which to base said instruction. We are of the opinion that this proposition of error should be sustained. While the evidence is conflicting, and while the court may not have believed the defendant's evidence, this is a matter that should have been left to the jury, which right was denied the defendant by the peremptory instruction of the court.

The defendant testified on the trial of the case as follows:

"My name is G. H. Orr. I am the defendant in this case. I was approached by the plaintiff, L. A. McDaniel, I believe it was the 3d of August, 1925. We didn't write it up on the same day that we were talking. He came to me with a proposition of completing a house. He told me where it was, but I had seen it previously, and knew about where it was. I was in the contract business, and he approached me, and wanted $2,000 to complete a house. Said that he could save from $600 to $800 by getting the money and shipping the material in, and he said he was willing to give me $250 if I would advance the money as the material arrived, or furnish the material in other words, and pay his labor bills as they accrued, and also in helping him secure the $2,500 loan from the loan company, the Standard Savings & Loan Company of Detroit, Mich. He told me there that he had made an application for a loan through Pember and Staggs. When I went to make up this contract, I found that it was made out to S. S. Forrest. In our first conversation, he said he could save from $600 to $800. As I understood it, I was really furnishing the material. At that time he just made the remark, 'You know from your experience in ordering material that I can save that.' I had built many houses in Slaton. I told him

that I could order the material, but he preferred to order it, as he already had prices and could get it a little quicker by letting it come on in his name from the particular parties. The next time I saw Mr. McDaniel was when the contract was signed up on August 4th. I think the contract and the mechanic's lien were made up about the same time. He told me when he first approached me that he only needed 60 days to complete this building. But he was engaged out at Muleshoe, and he couldn't commence building the house. So it just rocked along for 60 days before he signed up the papers. On or about the 4th of August we came to an agreement, and I agreed to carry it through for him. The additional security and the $300 note was to secure me in case the loan fell through, to secure me for the money that I invested in the house. It was understood that this loan had practically been accepted, but, of course, there can be many slips between that and getting the money, and he offered to give this additional security, and I accepted it. I did not demand it. On October 4th, when this contract was signed, I believe that Mr. Pember was the only one present besides Mr. and Mrs. McDaniel and myself. Mr. Pember drew the contract, but I don't think that any of us were there at the particular writing of the contract. I did not dictate the terms of that contract. I just gave Mr. Pember the facts about it, and he wrote it up. I do not know whether Mr. McDaniel read it when he signed it, or not. I was not present when he signed it. I had left it in Mr. Pember's charge to have it signed.

"In order to carry out the contract as the material arrived, it happened that Mr. McDaniel was not in town. At least on one occasion his wife came to me and asked me to pay the draft on a car that was there, and I went and paid the bills at the depot, and then paid the draft at the bank, and then went and got the teamster that unloaded it, and showed him where the car was. I paid the labor bills for the construction of this building. I kept a record. I paid everything so far as I know that went into the house. The money would not cover the plumbing, and he was to rough it in, and that is the reason that the provision was made so that he could pay the additional as he saw fit. If there was any additional costs, he was to pay them himself. It was included in our original conversation that the way I was to get my money back was for me to sign this mechanic's lien. The loan was mentioned in our original conversation. The substance of our conversation was that somebody had to sign this mechanic's lien in order that he could get this money. In other words, I had to become a contractor in this case in order for him to secure the $2,500 and I, from the beginning, recognized myself as the real contractor. I was only executing the agreement that I had agreed to do from our conversation. He agreed to give me $250 for my trouble in all of the transaction, covering both the receiving of the material and seeing after it, keeping up with the men and to secure the loan. Nothing was said about interest, except in the contract lien it bore 10 per cent. interest from maturity until paid. That is the maturity of our contract which ran 120 days. He said that he could finish it in 60 days, but he got tied up, or rather said he was, and I

extended it 60 days for him. The maturity date was for maturity of the contract, the completion of the house. I gave him double time than what he asked for, and that $56 is from the time it matured until paid."

If the $250 received by defendant was, in good faith, intended as compensation for his services in paying for the labor and paying the bills for material, or as compensation for securing the loan for the plaintiff, and was not, in fact, compensation for the use of the money, the receipt of the $250 by the defendant would not, under those circumstances, constitute usury. This presented a question of fact which should have been submitted to the jury. It is evident that the court was convinced of the falsity of the defense to the charge of usury, but, as a jury had been sworn to try the issues of fact, it was a question for them to determine. Sugg v. Smith (Tex. Civ. App.) 205 S. W. 363-374; Bomar v. Smith (Tex. Civ. App.) 195 S. W. 964–971; Slaughter Co. v. Eller (Tex. Civ. App.) 196 S. W. 704.

[2] The contract not showing usury on its face, the question of whether or not the transaction was intended as an evasion of the law on usury was one for the jury. Andrews v. Hoxie, 5 Tex. 171; Mitchell v. Napier, 22 Tex. 120; Sheffield v. Gordon, 34 Tex. 530; Investment Co. v. Grymes (Tex. Civ. App.) 50 S. W. 467; Cotton v. Cooper (Tex. Civ. App.) 160 S. W. 597.

We therefore reverse the judgment of the trial court, and remand the case for a new trial.