## STARKS v. NATIONAL BOND & MORTGAGE CORPORATION.

### No. 2806.

Court of Civil Appeals of Texas. Beaumont.
July 17, 1935.

Rehearing Denied Sept. 25, 1935.

A. B. Wilson and John & Levy, all of Houston, for appellant.

Buck & Lattimore, of Fort Worth, and Vinson, Elkins, Sweeton & Weems, of Houston, for appellee.

O'QUINN, Justice.

Appellant brought this suit in the district court of Harris county to recover against the National Bond & Mortgage Corporation, appellee, double the amount of alleged usurious interest claimed to have been paid on a loan of $3,600. The case was submitted to a jury upon special issues which were answered in favor of appellee, and judgment accordingly rendered. Motion for a new trial was overruled, and we have the case on appeal.

James Starks and his wife, Mary Starks, appellant herein, owned a homestead consisting of 100x100 feet, known as parts of lots 2 and 3, block 4, in the Parker-Smith addition to the city of Houston, Tex., on the north side of Buffalo bayou. On April 2, 1925, they executed to J. A. Rawlings a note for $1,000, and a mechanic's lien to secure the payment of said note covering the entire 100x100 feet, reciting that same was their homestead. The note and lien were given for improvements (sewerage service to three houses) to be made upon the entire property. The improvements were actually made. The note was payable in three years and bore interest at the rate of 8 per cent. per annum payable every six months, as it accrued, and contained the usual 10 per cent. attorney's fee clause, and further provided that failure to pay any installment of interest, when due, should at the option of the holder of the note fully mature same.

On May 16, 1928, the Starks executed a note for $2,496 to J. E. Johnson, secured by a mechanic's lien on the said 100x100 foot parcel of land, for the purpose of making further improvements on said property. There were at that time three houses on the 100x100-foot tract, and the $2,496 note secured by the mechanic's lien on the whole tract was in part for the erection of a fourth house, and in part for repairs and improvements of the other three houses. This money was actually used for the betterment of all the buildings on the homestead, and the erection of a fourth house. The note was payable to Johnson sixty days after date and bore interest at the rate of 8 per cent. per annum, the interest payable monthly, as it accrued, and contained the usual 10 per cent. attorney's fee clause; all past-due principal and interest to bear 10 per cent. interest until paid. The mechanic's lien further provided that in case of default at the option of the holder of the indebtedness the entire obligation should mature.

On June 23, 1928, the Starks executed to T. E. Johnson a note for $300 and a mechanic's lien covering the said 100x100-foot tract to secure the payment of the note. The note was payable thirty days after date, and bore interest at the rate of 8 per cent. per annum, and contained the all maturing clause and the usual 10 per cent. attorney's fee clause. The $300 thus secured was to build cement sidewalks on two sides of the property.

On July 12, 1928, the Starks procured the taking up of the three notes above mentioned by the National Bond & Mortgage Corporation, appellee herein, and on that date the Rawlings note for $1,000, on which $200 had been paid, together with the mechanic's lien securing its payment, and the $2,496 note and mechanic's lien securing same, and the $300 note and mechanic's lien securing it, held by T. E. Johnson, were transferred and duly assigned to said National Bond &

Mortgage Corporation, and the Starks executed a note payable to said National Bond & Mortgage Corporation for $3,600 bearing 6 per cent. interest from date until maturity, the interest payable monthly for the first thirty-six months as it accrued. The note was payable in monthly installments of $52.60, the first to become due on August 12, 1931, and one on the 12th day of each succeeding month until the full amount of principal was paid; all past principal and interest to bear interest at the rate of 10 per cent. per annum. This note contained the usual acceleration and attorney's fee clauses. On said date, July 12, 1928, the Starks also executed a deed of trust covering the whole of the 100x100-foot tract to secure the payment of this note. At said date the Starks also executed and delivered to the National Bond & Mortgage Corporation two other notes; one for $667.62, bearing 6 per cent. interest, principal and interest payable in monthly installments of $15.73; and one for $373.26, payable in monthly installments of $10.37, all secured by deed of trust lien on the 100x100-foot tract.

November 11, 1930, James Starks died. Mrs. Starks continued to reside on the property as her home. On December 18, 1931, appellant, as independent executrix of the last will of James Starks, her deceased husband, filed this suit alleging the loan by appellee was usurious, and that 50x 75 feet of the property encumbered by the several mechanic's liens and deeds of trust was at all times the homestead of her and her deceased husband, and hence not subject to all the indebtedness.

Appellee answered by general demurrer, general denial, the two-year statute of limitation, and specially pleaded its notes and the liens securing the payment of same, and the Johnson notes and mechanic's liens securing same, which had been assigned to it. It further answered specially that the note for $667.62 was not for interest but to cover certain expenses which it would have to meet in making the loan, including the cost of selling its bonds to raise the money to loan the Starks, expenses of obtaining a surety to guarantee the payment of the obligations, a fee to be paid to the trustee acting under the deeds of trust, and amount to pay tax refund to the purchasers of the bonds sold to raise money for the loan. It further pleaded that the notes were in default of payment and sought a foreclosure of its liens.

The case was tried to a jury upon special issues, in answer to which the jury found that the expenses pleaded by appellee, for the repayment of which the $667.62 note had been executed, were actually incurred and paid by appellee, and that appellee did not charge the Starks more than 10 per cent. for the use of the money it had loaned to them. On this verdict and answers of the jury, judgment was rendered for appellee for its debt and for foreclosure of its lien on the whole of the property. From this judgment this appeal was taken.

Appellant's first four assignments attack the sufficiency of the evidence to support the jury's answers to the special issues. The contention is urged that appellee intended that the several items of expense claimed by it as incurred in making the loan to the Starks were interest on the money loaned, and not in fact expenses incurred and paid.

■ The notes and liens securing them are regular on their face, nothing to show that usurious interest was intended to be collected. Whether the expense items were intended to be charged and collected as interest on the $3,600, or were to be repaid to appellee as actual costs in making the loan, was one of fact to be found by the jury. National Bond & Mortgage Corporation v. Mahanay (Tex. Com. App.) 80 S.W. (2d) 947 (sixth paragraph syllabus). The application of the Starks for the loan evidenced by the $3,600 note specifically stated that they were to execute the note for $667.-62 to cover and repay certain items of expenses enumerated incurred in making the loan, the application specifically stating the nature of the expenses to be paid, and providing for the disposition, if any, of any excess that might arise by payments over the authorized amounts, to be applied to the principal of the note evidencing the loan. This instrument was in evidence. Harry Viner, secretary and treasurer of appellee, testified that he was personally cognizant of the Starks loan; that the matters of expense provided in the application and contract were contemplated, necessary, incurred, and actually paid. He explained minutely the details of the transaction, and his testimony relative to the items of expense and their payment was supported by canceled checks showing such payment. The jury passed upon the intention of the parties, and found that the expenses were incurred and were actually paid. The record amply supports their finding. These assignments are overruled.

The fifth assignment is that the court erred in granting judgment of foreclosure of the mechanic's liens and deed of trust upon

appellant's homestead—50x75 feet in the corner of the 100x100-foot tract bordering on Davis and Mills streets, for the whole amount of the alleged indebtedness, because same was not liable for the cost of improvements made on the remainder of the said 100x100-foot tract, but was liable only for such improvements as were made on the 50x75 feet.

April 23, 1896, James Starks and his wife, Mary Starks, owned and resided upon a parcel of land 100x100 feet, described as parts of lots 2 and 3 in block 4 of the Parker-Smith addition to the city of Houston, Tex., being in the corner of said block fronting 100 feet on Davis street and 100 feet on Mills street. The following sketch will illustrate the divisions of the said 100x100-foot parcel of land, and the matters relative thereto hereinafter discussed:

The residence was in the corner facing Davis street. In 1906, they moved the house from the 50-foot lot on which it was situated east onto the first 25 feet of the other lot, and erected a new residence on the original home site. There appears another house on the extreme right 25 feet. When this house was built is not shown, but it was before any of the transactions here involved. The old residence, when moved east, as stated, and the other house to its east, were used for rent houses and the rent appropriated for living purposes of the Starks. The residence, after 1906, was numbered 1718, the old house which had been moved east was numbered 1714, and the one next east numbered 1710. The houses were separated by fences.

In 1916, Vernie Starks, daughter of the Starks, married, and she and her husband

occupied 1714 continuously up to the trial of the case.

April 2, 1925, the Starks desiring to improve their said property, entered into a contract with J. A. Rawlings to make and connect sewerage lines with all three of the houses then on the property, and gave to Rawlings their note for $1,000 together with a properly executed mechanic's lien on the whole 100x100 parcel or tract, to secure its payment, reciting that same was their homestead. These improvements were duly made by Rawlings. The note was payable in three years and bore 8 per cent. interest payable every six months as it accrued, and contained the usual 10 per cent. attorney's fee and acceleration clauses.

On May 16, 1928, the Starks executed a note for $2,496 payable to T. E. Johnson, secured by a mechanic's lien on the said 100x100-foot tract of land, for the purpose of making further improvements on said property. At this time there were three houses on the 100x100-foot tract (the residence home and two rent houses). The $2,496 note, secured by the mechanic's lien on the whole tract, was in part for the erection of a fourth house, and in part for repairs and improvements of the three houses. This money was actually used for the betterment of all three of the buildings upon the 100x100-foot tract, and for the erection of a fourth building. The fourth house appears on the sketch as No. 2606 fronting Mills street. The note was payable to Johnson sixty days after date and bore 8 per cent. interest payable monthly as it accrued, and contained the usual 10 per cent. attorney's fee and accelerating payment clauses.

On June 25, 1928, the Starks, desiring to further improve their said property, executed their note in the sum of $300, payable to T. E. Johnson thirty days after date, bearing 8 per cent. interest, and containing the usual 10 per cent. attorney's fee and acceleration payment clauses. They also executed to Johnson a mechanic's lien on the property to secure the payment of the note. This was to build cement walks on two sides of the property—100 feet on Davis street and 100 feet on Mills street.

As before stated, on July 12, 1928, the Starks procured the taking up of the three notes above mentioned, by the National Bond & Mortgage Corporation, appellee, in which transaction each of the said notes and the mechanic's liens securing the payment of them were transferred to said corporation. The judgment herein was for

appellee, on its cross-action, for its debt and for foreclosure of its lien against the whole of the 100x100-foot parcel of land. Appellant contends this was error. It is insisted that the lien could be foreclosed for only the amount actually expended in repairing the residence homestead—No. 1718 situated on a space of 50x75 feet in the corner of the original tract, bordering Davis and Mills streets.

■ On April 2, 1925, and long prior thereto, the portions of the homestead covered by the two rent houses shown on the sketch as numbers 1714 and 1710 had been abandoned as a part of and severed from the homestead and devoted to uses other than that of the home, by continuously renting the two houses; they being separated from the residence by fences and the rent appropriated to maintenance of the family. Guaranty Const. Co. v. Atwood (Tex. Civ. App.) 43 S.W.(2d) 159. So the amount of the Rawlings $1,000, secured by a mechanic's lien on the whole property, which was expended for sewerage in connection with the two rent houses, could not have been and was not chargeable to or against the home, and the lien for this did not operate against it. The debt and lien did attach to cover the amount actually expended for sewerage improvements on the home, No. 1718.

■ On May 16, 1928, the home, 1718, was situated on the west 50x100 feet of the original 100x100-foot tract, and fronted Davis street. On the back of this was the barn, chicken house, etc. On this date they entered into the contract with Johnson for the repairing of the residence house and the two rent houses to the east, 1714 and 1710, and for the building of a fourth house for rent purposes on the back of their residence lot. To accomplish this they executed the aforementioned note for $2,496, and the mechanic's lien on the whole of the 100x100-foot tract to secure the payment of the note. The sketch above discloses that to make room for the fourth house, 2606 on Mills street, they cut off 25x75 feet on the back of their residence or homestead property. This was separated from the rest of the property by the erection of a fence at the time the fourth house was built. The Starks, at the time they contracted with Johnson for the improvements, had decided to use this property for other than homestead purposes, that is, for permanent renting for revenue, and this was understood by all parties to the contract, and was an abandonment of the 25x75-foot portion of

the homestead lot for homestead purposes. Under the holding in Atwood v. Guaranty Const. Co. (Tex. Com. App.) 63 S.W.(2d) 685, the mechanic's lien given to secure the payment of the note for these improvements could not operate to apply to the 50x75 feet of the lot constituting the homestead, though same was to be also improved by the expenditure of a portion of the $2,496 provided in the same contract. The mechanic's lien would be enforceable against the 50x75-foot homestead parcel for only the actual amount expended on that property.

■ On June 25, 1928, the Starks contracted with Johnson for the building of cement walks on two sides of their property —100 feet on Davis street, and 100 feet on Mills street. To accomplish this they gave their note to Johnson for $300 and executed a mechanic's lien covering the whole 100x 100-foot tract to secure its payment. At that time their homestead consisted of 50x 75 feet of the corner lot bordering Davis and Mills streets. All of the rest of the 100x100-foot tract had been abandoned as a part of the homestead and devoted to uses other than homestead. The cement walk touched the homestead lot 50 feet on Davis street and 75 feet on Mills street, and the lien was enforceable only as to the amount of the cost of the walks expended for this 125 feet. Atwood v. Guaranty Const. Co. (Tex. Com. App.) 63 S.W.(2d) 685.

There is no proof as to the costs of the improvements made on the 50x75 feet homestead.

From what we have said, it follows that the judgment refusing appellant a recovery for usurious interest claimed to have been paid, should be affirmed, and that the judgment in favor of appellee for foreclosure of its lien on the 50x75 feet constituting the homestead of appellant, for the whole of the several indebtednesses, was error, and that the foreclosure of the lien on said 50x75 feet, the homestead, should have been only for the amount of the costs of improvements actually made on same. There being no proof of the costs of improvements made on the home, therefore that portion of the judgment foreclosing the lien will have to be reversed and remanded for the purpose of ascertaining same, for which, when ascertained, the lien may be foreclosed.

The judgment is affirmed in part, and in part reversed and remanded, as above indicated.