

# THE ATTORNEY GENERAL

# OF TEXAS

## AUSTIN, TEXAS

**PRICE DANIEL**
**ATTORNEY GENERAL**

April 7, 1949.

Hon. Keith Kelly, Chairman
Senate Committee on Banking
51st Legislature
Austin, Texas

Opinion No. V-804.

Re: Constitutionality
of Senate Bill 334,
regulating and li-
censing small loan
concerns.

Dear Sir:

In accordance with the request of the Senate
Committee on Banking, we have considered the constitu-
tionality of Senate Bill 334, by Strauss, licensing
and regulating small loan concerns.

This bill, styled "The Texas Small Loan Act",
is a comprehensive measure which finds detailed facts
to necessitate regulation of the described small loan
field, details the "administrative machinery" to pro-
vide such regulation, and limits both the interest and
the expense charges of these lenders. To enumerate,
discuss, and pass upon each provision of this act would
unnecessarily lengthen this opinion. As to the propri-
ety of such an act as a whole, we think it sufficient
to say that the loan business in Texas is subject to
regulation[1] and that a legislative classification which
regulates money lenders as a group separate from other
lenders "will be upheld unless it appears, clearly and
without doubt, that it has no reasonable basis for sup-
port".[2] No such unquestionably clear lack of any rea-
sonable basis for this bill, in its entirety, appears
to exist;[3] so we turn to consideration of those few pro-
visions of this measure which, by their specific subject
matter, raise some doubt regarding their relation to con-
stitutional provisions respecting usury.

---

1. <u>Juhan v. State</u>, 216 S.W. 873 (Tex. Crim. 1918.)
2. <u>Watts v. Mann</u>, 187 S.W.2d 917 (Tex. Civ. App. 1945
   error ref.) at p. 925.
3. As to reasonableness of classifying the small loan
   business as a distinctive class for regulation, read
   <u>Koen v. State</u>, 39 S.W.2d 283 (Tenn. Sup. 1931.)

Hon. Keith Kelly - Page 2   (V-804)

Section 11 of Article XVI of the Constitution of Texas provides:

> "All contracts for a greater rate of in-
> terest than ten per centum (10%) per annum
> shall be deemed usurious, and the first Leg-
> islature, after this amendment is adopted,
> shall provide appropriate pains and penalties
> to prevent the same. . . ."

While "usury is defined and denounced by the Constitution",[4] the term "interest" is not there defined; and it follows that the word "interest" was used in its common law sense. "'Interest', as known to the common law, is defined as 'a compensation usually reckoned by a percentage for the loan, use, or forbearance of money'",[5] and it is in this sense that we must apply the term. The vice of H.B. 334, if there be one, would seem to be in those provisions of Section 12 which allow the licensee to charge, in addition to interest at 10% per annum, a fee at the time of the loan for "reasonable expenses in-curred" and "services rendered" in connection with the loan, as well as a subsequent fee for services rendered or expenses incurred in connection with this loan, all within specified limits. If this provision authorizes an additional charge "for the loan, use, or forbearance of money", that charge is "interest" and this section would be unconstitutional in attempting to authorize usurious practices.

The general rule respecting a distinction be-tween "interest" and other charges to the borrower has been stated thus:

> "The weight of authority is clearly to the
> effect that payment by the borrower of reason-
> able expenses incident to the loan, and of rea-
> sonable compensation for trouble and services
> involved in, or necessitated by, it, when paid
> and received in good faith, for such purposes
> only, and not as consideration for the loan, do
> not constitute usury, even though they make the

---

4. Watts v. Mann, 187 S.W.2d 917 (Tex. Civ. App. 1945, error ref.) at p. 925.
5. Parks v. Lubbock, 92 Tex. 635, 51 S.W. 322 (1899)

cost of the transaction to the borrower
exceed the maximum legal interest."[6]

That Texas is in accord with this general
rule, at least as respects sums paid for bona fide
services of third parties, is too well settled to
need discussion of authorities.[7] It is equally clear,
however, that the courts of Texas will look to the
substance of such transactions, rather than the form,
and will label usurious any attempt to create a sub-
terfuge to conceal interest under the guise of legiti-
mate charges.[8] The rule in usury cases is that the
question of whether a given contract was undertaken
and discharged in good faith or was undertaken with
intent to collect usurious interest is a fact question
for jury determination, and the courts will naturally
uphold fact findings of usury if there is evidence to
support that finding.[9]

The Texas courts, on the other hand, have
not made a square holding on the legality of addition-
al charges by the lender himself, rather than by a
third party. They have neither squarely held such
charges to be "interest," nor have they squarely held
such charges are not interest. Assuming, however,
that actual services are rendered to the borrower by
the lender, there is ample reason to feel the courts

6. 21 A.L.R. 819.
7. Slaughter Co. v. Eller, 196 S.W. 704, (Tex. Civ.
App. 1917 error ref.);Nevels v. Harris, 129 Tex.
190, 102 S.W.2d 1046 (1937.); Wooldridge v. State,
183 S.W.2d 746 (Tex. Civ. App. 1944, error ref.
w.m.)
8. Slaughter Co. v. Eller, 196 S.W. 704 (Tex. Civ.
App. 1917, error ref.);Hudmon v. Foster, 210 S.W.
262, reversed on other grounds, 231 S.W. 346 (Tex.
Comm. App. 1921); Glover v. Buckman, 104 S.W.2d 66,
(Tex. Civ. App. 1937, error dism.);Baltimore
Trust Co. v. Sanders, 105 S.W. 2d 710 (Tex. Civ.
App. 1937, error dism.); Donoghue v. State, 211
S.W.2d 623, (Tex. Civ. App. 1948, error ref.
n.r.e.)
9. Orr v. McDaniel, 5 S.W.2d 175, (Tex. Civ. App.
1928); Starks v. National Bond & Mort. Corp. 85
S.W.2d 1056 (Tex. Civ. App. 1935, error dism.);Na-
tional Bond & Mort. Corp. v. Mahaney, 70 S.W.2d
236; modified on other grounds, 124 Tex. 544; 80
S.W. 2d 947 (1935);Trinity Fire Ins. Co. v. Kerr-
ville Hotel Co., 129 Tex. 310, 103 S.W.2d 129
(1937).

would not find the presence in a single person of both lender and performer of services, in and of itself, a basis to deny him reasonable remuneration for the work he performed. That the work must actually be done and that the charge for this work must be for services specifically related to this transaction, yet separate and distinct from the simple operation of making an ordinary loan, is well settled. Given the proper facts, we feel the courts have indicated such a situation would not be usurious as a matter of law, for we find such statements as these:

> "The borrower might legitimately agree to compensate the lender for services of such character (lender's labor to keep informed of the condition of the borrower's business and to see the funds were not used except in the business being financed), although performed in the interest of the lender, . . . provided always that such charges are not made a mask behind which to conceal the true purpose of the parties."[10] (Parenthetical explanation ours.)

> ". . . Admittedly it was never even contemplated that appellant was to, nor did it in fact ever, get anything except the use of the money. No quid pro quo could therefore have gone to it for anything else, and so it results practically that the use of the money was alike the only advantage to the one party to the 'arrangement,' and the only detriment to the other. . . .

> "Had the contract required the inspections, and the 8 per cent on that account been only chargeable where they were actually made, as well as shown to be a reasonable compensation for the service, the majority of this court are unwilling to hold that, so far, it would have been usurious; but, as pointed out, that is not the case made for the appellee here. . . .

---

10. Slaughter Co. v. Eller, 196 S.W. 704 (Tex. Civ. App. 1917, error ref.) at p. 708.

"The authorities cited. . . involved
legitimate benefits <u>to the borrower</u>, either
from third persons not sharing them with the
lender or from the lender direct for some
distinctly separate and additional consid-
eration than the simple loaning of the money."[11]

"Admittedly, a lender may, without vio-
lating the usury law, make an extra charge
for any distinctly separate and additional
consideration other than the simple lending
of money. . . ; and where there is any dis-
pute in the evidence as to whether there was
any other separate and additional considera-
tion, a question of fact is raised for the
jury."[12]

Finally, on this point, we have the recent
holding in <u>Wooldridge v. State</u>, 183 S.W.2d 746, (Tex.
Civ. App. 1944, error ref. w.m.), ruling upon the con-
stitutionality of Senate Bill 43, 48th Legislature,
1943, codified as Article 4646b, V.C.S., an act which
empowers injunctive relief against habitual usurers.
This act contains provisions that "actual and necessary
expense" may be charged and that there shall be a pre-
sumption that the actual expense "of making any such
loan" was at a designated rate in relation to the amount
loaned. In passing upon this act, the court said, at
p. 748:

"We are unable to find anything in Ar-
ticle 4646b which conflicts with the consti-
tutional provision prohibiting the charging
of usurious interest.

". . . .

"The next clause provides that nothing
in the Act shall prevent charging of any ac-
tual and necessary expense, now or hereafter
permitted and authorized by law, and that

---

11. <u>Independent Lumber Co. v. Gulf State Bank</u>, 299 S.W.
939 (Tex. Civ. App. 1927, error ref.)
12. <u>Greever v. Persky</u>, 140 Tex. 64, 165 S.W.2d 709
(1942).

such shall not be considered interest.
The clause is so plain that it is not
necessary to call attention to its qual-
ifying phrase 'now or hereafter permit-
ted and authorized by law.'  It contains
no suggestion that charges may be made
that are forbidden by the Constitution.
The implication of the language used is
quite to the contrary. . . It is not
necessary to cite authority for the
proposition that the lender may charge
the borrower for certain types of ex-
penses incurred in making the loan, and
that such charges are not interest."

Were it not for the fact that the above
language is followed by three examples of permissi-
ble charges, all three of which relate to services
rendered by third parties, we would feel the Wool-
dridge Case, above, is ample authority for our po-
sition.  The holding certainly contains nothing to
weaken our view that the lender can charge for his
own services in a proper fact situation.

Turning to the language of Section 12 of
S.B. 334, we find great care has been evidenced to
specify the permissible charges shall be for "reason-
able expenses incurred", "services rendered","speci-
fic expenses incurred or specific services rendered
solely in connection with the particular loan", and
shall not be "collected until such services have been
rendered".  One familiar with the Texas cases will
find it obvious that the framers of this section sought
carefully to guard against the practices the courts
have condemned, such as not actually performing the
services,[13] or charging for services which relate to
the general overhead of the business instead of the
specific transaction at hand.[14]  Section 12 does not,
however, attempt to detail and specify charges which
may be made.  It includes examples of charges but makes
no effort to describe all of the charges which might
be legitimate in a proper fact situation.  While there
are many Texas cases[15] passing upon various types of
charges, we find none expressly passing upon the items
given as examples in S.B. 334.

13.  Independent Lumber Co. v. Gulf State Bank, 299
     S.W. 939, (Tex. Civ. App. 1927, error ref.)
14.  Joy v. Provident Loan Society, 37 S.W.2d 254,
     (Tex. Civ. App. 1931, error dism.)
15.  Citations to at least 38 such Texas cases have
     been found in this search.

283

There is a very close parallel between the language in S.B. 334 and that of the small loan act of Tennessee,[16] and the Tennessee act has been thoroughly tested and approved by the Supreme Court of Tennessee.[17]

Since we have demonstrated that we cannot categorically hold charges as authorized by Section 12 of S.B. 334 to be usurious as a matter of law, we cannot say this provision violates the Constitution. It is axiomatic that to hold a legislative act to be unconstitutional, it must appear clearly to contravene an express provision of the Constitution. If, as we think might well be found, there is a present right in the lenders to charge for legitimate services distinct from furnishing the money loaned, then S.B. 334, rather than enlarging any present right of lenders, actually operates to reduce the amounts to be charged for such services to the fixed maximums stipulated in Section 12.

While Section 12 fixes maximums for charges, it does not allow that maximum to be charged unless it is reasonable for the services rendered or expenses incurred. Subsections (c) and (d) of Section 12 do provide that charges not in excess of the maximum shall be presumed to bear a reasonable relation to the service rendered; and, if the charge is found not to bear a reasonable relation to the services rendered, the borrower can recover only the excess charge. A similar feature in House Bill 6, 47th Legislature, 1941, occasioned some concern by this office when holding that bill to be constitutional.[18] We think the courts would confine this provision to its express terms. As stated in Wooldridge v. State, 183 S.W.2d 746 (Tex. Civ. App. 1944, error ref. w.m.) at page 749, "Under elemental rules of law, this provision only serves to relieve the lender of the burden of proving such expenses so long as there is no proof to the contrary. . . The rule . . . does not of itself purport to authorize the collection of usurious interest."

16. The Tennessee act allows fees "for investigating the moral and financial standing of the applicant and the nature and value of the assurance for repayment of the loan and other necessary expenses and losses for closing the loan." Koen v. State, 39 S.W.2d 283 (Tenn. Sup. 1931)

17. Koen v. State, 39 S.W.2d 283 (Tenn. Sup. 1931); Family Loan Co. v. Hickerson, 73 S.W.2d 695 (Tenn. Sup. 1934)

18. Opinion No. 0-3206, March 29, 1941, at p. 8.

Since the bill does not allow charges except for services actually performed, the presumption above considered could only arise to show that services done in good faith were of the value charged. But, should a court find the facts in a given case to raise a fact question that charges may have been made in bad faith, with no intent to comply with the spirit of this bill, the presumption would lose its effect in the face of the fact issue created.. In this connection, we invite attention, without comment, to language in Subsection (c) of Section 12 which makes reference to services "to be rendered" and expenses "to be incurred". No provision to allow any charges for any such services or expenses exists in this bill. Given a fact situation which revealed a scheme and a subterfuge to make charges, for the use of money, in excess of ten per centum per annum, we think a court, statutory presumption notwithstanding, would find usury in the transaction. In any event, our problem here is whether this bill, if followed, would violate the Constitution, not whether the bill might possibly be thwarted by illegal abuses. There are several "pains and penalties", to use the constitutional language, in S.B. 334 for such abuses, and nothing contained in this bill could relieve anyone from the penalties provided if he used the bill or the presumption thereunder as a subterfuge for collecting what amounted to usury.

It will be noted that there is no presumption under the bill that the services were rendered. The only presumption created is that charges, if made in accordance with the bill, would be presumed to bear a reasonable relation to the services rendered. It should be noted, however, that while the courts have distinguished between charges for the use and detention of money ("interest") and charges for additional services rendered, they have looked very carefully into transactions to uncover abuses. Whether a charge is for interest or for actual additional services rendered is generally regarded as a question of fact. The following are excerpts from some cases which are illustrative:

> "It is quite immaterial, in what manner or form, or under what pretense it is cloaked, if the intention was, to reserve a greater rate of interest than the law allows for the use of money, it will vitiate the contract with the taint of usury. Whether the transaction was so intended, where upon its face, it does not

appear to be usurious, is a question of intention for the decision of the jury."[19]

"It is apparent that the only services rendered were those necessarily required in making the ordinary loan. The interest allowed by statute is intended to compensate for such services. The evidence wholly failed to show that any such extra service was rendered as would authorize a charge therefor. The means employed in this case cannot be used to avoid the effect of the usury statute. To allow extra charges for such services would destroy the purpose of the usury laws."[20]

"If it was applied to the overhead cost of the lender's business, it would also be interest."[21]

"Admittedly, a lender may, without violating the usury law, make an extra charge for any distinctly separate and additional consideration other than the simple lending of money. . .; and where there is any dispute in the evidence as to whether there was any other separate and additional consideration, a question of fact is raised for the jury. But since, according to his own testimony, Greever did not render any service whatever to the borrower other than procuring and lending the money to him, for which he had no right to charge an extra commission or bonus, there was no question of fact to be determined by the jury as to whether the parties intended that the commission should be charged as interest for the use of the money or as compensation for Greever's services in procuring the money from a third party."[22]

---

19. Mitchell v. Napier, 22 Tex. 120 (1858)
20. Forreston State Bank of Forreston v. Brooks, 51 S.W.2d 645 (Tex. Civ. App. 1932)
21. Eastern Mort. & Securities Co. v. Collins, 118 S.W.2d 479 (Tex. Civ. App. 1938, error ref.)
22. Greever v. Persky, 140 Tex. 64, 165 S.W.2d 709 (1942)

The validity of the bill and contracts made thereunder is dependent upon the giving by the lender of some additional consideration; he must in fact perform some service other than those ordinarily incident to the making of a loan. This bill contemplates the actual performance of such additional service. Otherwise the lender's charge would be usurious if, when it was added to the "interest", the total rate of return exceeded ten per centum per annum.

In concluding that S.B. 334, viewed in the most favorable light, is not unconstitutional, we are supported by the prior official opinions of this office. This office condemned as unconstitutional two bills, House Bill 420, 46th Legislature, 1939,[23] and House Bill 174, 47th Legislature, 1941,[24] because those bills would have authorized charges for prospective services as well as services rendered and because those bills deprived the licensees of proper notice of actions against them. These unconstitutional features were not present in House Bill 6, 47th Legislature, and they are not present in Senate Bill 334, 51st Legislature. When, as above indicated, the administration of Attorney General Gerald C. Mann carefully considered two small loan bills in a single opinion and held one constitutional and the other unconstitutional, a line of demarcation was clearly drawn. The bill now before us is the parallel of that which the Mann administration approved in every respect significant to the problem at hand. We follow those prior holdings of this office on small loan legislation.

### SUMMARY

The Texas Small Loan Act (S.B. 334, 51st Leg., 1949) is constitutional. It would not make lawful any act not already so, as it enacts the principle that a lender may contract with a borrower for a reasonable fee (within maximums fixed by the bill) for additional services actually rendered, in addition to the lender's charge for the use of money. Whether such fee is a charge for actual additional

---

23.   Opinion No. 0-726, May 13, 1939.
24.   Opinion No. 0-3206, March 29, 1941.

services rendered or is a mere subterfuge
to conceal usurious interest will be a
question of fact in each transaction.
Such fees, when legitimately charged in
good faith, would not be a part of the
interest charged; so this bill would not
violate Section 11 of Article XVI of the
Constitution of Texas.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By *David B. Irons*
David B. Irons
Administrative Assistant

DBI:wb

APPROVED:
*Joe R. Greenhill*
FIRST ASSISTANT
ATTORNEY GENERAL